**Wilma OSIER, Plaintiff,**

v.

**BROOME COUNTY and Patrick Brennan in his individual capacity, Defendants.**

**No. 96–CV–1952.**

United States District Court, N.D. New York.

May 11, 1999.

Stone Law Firm, Vestal, NY (Michelle Stone, of counsel), for Plaintiff.

Broome County Attorney's Office, Binghamton, NY (Robert G. Behnke, of counsel), for Defendants.

## MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff Wilma Osier ("plaintiff") commenced the instant litigation pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964 and 1991 ("Title VII"), 42 U.S.C. § 2000e–2, claiming that she is the victim of hostile work environment sexual discrimination, that she was treated differently than male employees because of her sex, and she was retaliated against for making complaints of sexual discrimination. Presently before the Court are defendants' motions pursuant to FED. R. CIV.

P. 56 seeking dismissal of the Complaint in its entirety.

## I. BACKGROUND

Because this is a motion for summary judgment by the defendants, the following facts are presented in the light most favorable to plaintiff. *See Ertman v. United States,* 165 F.3d 204, 206 (2d Cir.1999).

Plaintiff began working for the Defendant Broome County (the "County") as a janitor in the Building and Grounds Division of the County Department of Public Works. According to plaintiff, she is the only female in her department. Comp., at ¶ 8. During her employment with the County, she had received satisfactory performance and attendance evaluations. Comp., at ¶ 7. Beginning in approximately July 1988, plaintiff alleges that she was the subject of a "continuing pattern of complaints, misconduct charges and incidents of sexual harassment because of her sex." Comp., at ¶ 8. Specifically, in her Complaint, plaintiff alleges the following incidents of sexual discrimination: (1) in the early 1990s, plaintiff found a pornographic picture and a condom in her locker, and another pornographic picture was handed to her, Comp., at ¶ 9; (2) in March 1993, plaintiff's supervisor, Dorson Russell ("Russell"), used his key to open the door to a bathroom that plaintiff was using, Comp., at ¶ 10; (3) plaintiff's work performance was more closely scrutinized and criticized than male employees and her supervisor solicited negative feedback on her work performance, Comp., at ¶¶ 11–12; and (4) plaintiff was served with misconduct charges on April 3, 1992, February 17, 1993, April 16, 1993, February 14, 1995, February 2, 1996, April 4, 1996, July 9, 1996 and September 9, 1996, and no male employee has ever been the subject to as many misconduct charges, Comp., at ¶¶ 13–14. In her answers to interrogatories, plaintiff listed other instances of alleged sexual discrimination as follows: (1) an incident in 1988 or 1989 where Russell kissed her in an elevator; (2) in 1989 or

1990, plaintiff sat in a chair in the break room that fell over because it was missing a caster; (3) Jim Fox, a co-worker, pushed her chair next to Russell; (4) plaintiff's co-workers routinely told dirty jokes in her presence; (5) Russell threw torn up pieces of paper on the ground and made plaintiff clean them up; (6) plaintiff was exposed to poison ivy and defendants failed to remedy it; (7) in 1993, co-worker Tom Quanta ("Quanta")[1] exposed his buttocks to plaintiff; (8) in the early 1990s, Quanta gave plaintiff a picture of a man dressed only in a pair of briefs "with a large bulge in the front of the briefs where the man's penis was located;" (9) from 1996–1998 Quanta made sexually suggestive comments to plaintiff; (10) Quanta cornered plaintiff in the corner with a cart; (11) Quanta placed a "Men Only" sign on the shop door; (12) Quanta tailgated plaintiff in his car; (13) Quanta stuffed a rag in plaintiff's mouth; (14) the County transferred Quanta to the same facility in which plaintiff was working; (15) co-worker Ken Sprague was advised by Leroy Dakin ("Dakin") not to talk to plaintiff or "he would go down the drain like her;" (16) plaintiff was repeatedly accused of misconduct and wrongdoing; and (17) Defendant Patrick Brennan ("Brennan") deducted three vacation days from plaintiff on the ground that previously authorized bereavement leave was improperly given. *See* Plaintiff's Response to Interrogs., at pp. 2–7.

On September 11, 1992, plaintiff filed a charge of discrimination with the State Division of Human Rights ("DHR") alleging that she had been "subjected to incidents of sexual harassment as the only female employee in my area." The charge specifically stated that:

> I[ ] firmly believe that my work performance has been more closely scrutinized and criticized than that of male co-workers. Male employees receive verbal warnings for serious infractions or performance related issues. I am given written warnings for minor problems, and served with formal disciplinary charges for no legitimate reason.... The [County] has been timing me on my work assignments, and apparently keeping a log of my activities. On information and belief, the [County] has sought negative comments on my performance from workers in the areas I am assigned to clean.

Defendants' Ex. "F". After investigation, the DHR concluded that plaintiff's allegation of sexual discrimination was without merit. In particular, the DHR's "[i]nvestigation revealed that [plaintiff] had received prior counseling for performance related issues, before being served with formal charges of misconduct in 4/92. Investigation revealed that an agreement was reached to resolve the charge. Investigation revealed that all employees are subject to progressive discipline." Defendants' Ex. "F".

On April 11, 1994, plaintiff filed another charge of discrimination with the DHR. In that charge, plaintiff alleged that the County was retaliating against her for having filed the September 1992 charge of discrimination. Plaintiff specifically alleged that:

> My supervisor, Dorson Russell, is constantly watching me, and following me on my work rounds. He questions people in my building about my performance, and tries to elicit complaints about my work. On March 8, 1993, Mr. Russell even used a key to open the door to the bathroom that I was using.... I do not believe that he treats the other employees under his supervision in the same manner.... My supervisors also have tried to force me to use the bathroom in the shop which is used by about 23 males.... After much discussion, they have given me a written list of bathrooms which I am allowed to use. Since filing my initial discrimination complaint in September 1992, I

---

**1.** This particular employee is sometimes referred to in the papers as Tom Quanta and other times as Tom Quaranta. The Court will refer to him as "Quanta."

have been served with two unjustified charges of alleged misconduct .... I was suspended and returned to work ... at a different location.

Defendants' Ex. "F".

The DHR again investigated the matter and, on January 29, 1996, concluded that "there is NO PROBABLE CAUSE to believe that the [County] has engaged in or is engaging in the unlawful discriminatory practice complained of." *Id.* (emphasis in original). Plaintiff pursued the matter with the EEOC which, by determination dated September 10, 1996, concurred with the findings of the DHR.

On December 11, 1996, plaintiff commenced the instant litigation asserting claims pursuant to 42 U.S.C. § 1983 and Title VII alleging that she was the victim of a hostile work environment, that she was treated differently than male janitors, and that she was retaliated against for having filed complaints of discrimination. Defendants now move for summary judgment pursuant to FED. R. CIV. P. 56 seeking dismissal of the Complaint in its entirety.

## II. DISCUSSION

### A. Local Rule Practice

■ Before addressing the merits of defendants' motion, the Court must regretfully address what has become a repeated failure by attorneys to comply with the clear mandates of Local Rules of the Northern District of New York. There simply are too many instances where attorneys take it upon themselves to either ignore or modify the Local Rules as they see fit. The Local Rules are not suggestions, but impose procedural requirements upon parties litigating in this District. *See, e.g., Riley v. Town of Bethlehem,* 5 F.Supp.2d 92, 93 (N.D.N.Y.1998). To reinforce the point that the rules are mandatory, they themselves make it clear that "[f]ailure of any attorney or of a party to comply with any provision of these Rules ... shall be a ground for imposition of sanctions." N.D.N.Y. L.R. 1.1(d).

■ Perhaps the most abused Rule is 7.1(a)(3) (formerly Rule 7.1(f)), which requires a motion for summary judgment to contain a Statement of Material Facts with specific citations to the record where the facts are established. A similar obligation is placed upon the non-movant who "shall file a response to the Statement of Material Facts ... [setting] forth a specific citation to the record where the factual issue arises." N.D.N.Y. L.R. 7.1(a)(3). This is not a complex procedural requirement with which to comply, but a simple, straightforward requirement designed "to force litigants to focus sharply on the specific factual issues in dispute," and to enable the Court to "move immediately to the gravamen of the case." *Riley,* 5 F.Supp.2d at 93.

Here, defendants properly submitted a Rule 7.1(a)(3) statement with citations to the record. In response, plaintiff submitted thirteen pages of purported facts without any indication where those facts can be located in the record. The consequence for plaintiff's disregard of this Rule is simple—"[a]ny fact set forth in [defendants'] Statement of Material Facts shall be deemed admitted." N.D.N.Y. L.R. 7.1(a)(3); *see Nicholson v. Doe,* 185 F.R.D. 134, 135. 1 (N.D.N.Y. 1999); *DeMar v. Car–Freshner Corp.,* 1999 WL 34973, at *1 (N.D.N.Y. Jan.14, 1999); *TSI Energy, Inc. v. Stewart and Stevenson Operations, Inc.,* 1998 WL 903629, at * 1 n. 1 (Dec. 23, 1998); *Costello v. Norton,* 1998 WL 743710, at *1 n. 2 (N.D.N.Y. Oct.21, 1998); *Squair v. O'Brien & Gere Engineers, Inc.,* 1998 WL 566773, at *1 n. 2 (N.D.N.Y. Aug.31, 1998).

### B. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, judgment may be entered in favor of the moving party if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all facts must be construed in favor of the nonmoving party. *Id.; Buttry v. General Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir.1995). Where the moving party has supported the motion by affidavits and/or documentary evidence, the nonmovant "may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [ ] rule [56], must set forth specific facts showing that there is a genuine issue [of material fact] for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." FED. R. CIV. P. 56(e); *see BellSouth Telecommunications, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir.1996). With this standard in mind, the Court will now address defendants' motion for summary judgment.

## C. Whether Plaintiff's Claims are Timely

Defendants first move to dismiss several of plaintiff's claims on the ground that they are time barred. Specifically, defendants claim that, under Title VII, any conduct occurring prior to November 16, 1991 (300 days prior to the filing of the September 11, 1992 charge) and any alleged retaliation occurring prior to June 17, 1993 (300 days prior to the filing of the April 13, 1994 charge) are precluded pursuant to 42 U.S.C. § 2000e–5(e). Defendants similarly argue that any conduct occurring prior to December 11, 1993 (three years before plaintiff filed her Complaint) may not be considered in connection with their claim pursuant to 42 U.S.C. § 1983.

Plaintiff responds that she is the victim of specific ongoing discriminatory practices or policies and that the County permitted specific, related instances of discrimination to go unremedied during this entire period. Accordingly, plaintiff seeks to invoke the continuing violation doctrine.

### 1. Timeliness of Title VII claims

Pursuant to 42 U.S.C. § 2000e–5(e), a charge of discrimination must be filed within 300 days "after the alleged unlawful employment practice occurred." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998). "This requirement functions as a statute of limitations in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." *Id.* (internal citations omitted).

▆▆▆ Because plaintiff filed her sex discrimination charge with the DHR on September 11, 1992, her Title VII cause of action would not include any incidents alleged to have occurred on or before November 15, 1991 unless she can demonstrate that she falls under the continuing violation exception. "The continuing-violation exception 'extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations.'" *Id.*, at 765 (quoting *Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir.1998)). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.'" *Id.* (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993), *cert. denied*, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994)). "However, a continuing violation may be found 'where there is proof of specific ongoing discriminatory polices or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Id.* (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir.1994)).

▆▆▆ The following incidents transpired prior to November 16, 1991: the kissing incident involving Russell in December of 1988 or 1989, see Plaintiff's Answer to

Interrogs., at p. 2, the incident whereby plaintiff fell over in her chair in August 1990, see Plaintiff's Feb. 5, 1993 letter to the DHR, the March 1990 incident involving plaintiff's bereavement leave, see Plaintiff's Answer to Interrogs., at p. 6–7, plaintiff's having found pornographic pictures and a condom in her locker some time prior to March 23, 1990, see Plaintiff's Feb. 5, 1993 letter to the DHR, allegations that Russell actively solicited unfavorable statements about her work during 1990, and any disciplinary charges or warnings that Russell gave plaintiff prior to November 16, 1991.

Because these acts are not sufficiently continuous in time with one another or other timely acts, plaintiff is not entitled to invoke the continuing violation exception. Plaintiff offers no proof that these instances were the product of an ongoing policy of discrimination or that defendants took actions in furtherance of such a policy. *See Connecticut Light & Power Co. v. United States Dep't of Labor,* 85 F.3d 89, 96 (2d Cir.1996).

Further, plaintiff has failed to adequately demonstrate that the County permitted any specific and related instances of discrimination to go unremedied for so long as to amount to a discriminatory policy or practice. For example, the undisputed evidence before the Court is that the County took appropriate action after learning about the incident involving the pornographic pictures and the condom in plaintiff's locker.[2] As the Second Circuit stated in *Quinn,* "[a]ll of these alleged acts are sufficiently isolated in time (usually from each other, and at least from the timely allegations) as to break the asserted continuum of discrimination." *Quinn,* 159 F.3d at 766; *see Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir. 1996); *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993).

**2.** The County investigated the matter, but was unable to determine who placed the items in plaintiff's locker. Accordingly, Brennan held a shop meeting with the janitorial crew in

The evidence also reveals that many of these acts were non-discriminatory. For example, there is no evidence that the chair or bereavement leave incidents were gender-based. Similarly, the evidence reveals that the incident where Russell allegedly soliciting negative recommendations in 1990 was a legitimate exercise of his supervisory authority over plaintiff. Plaintiff was repeatedly counseled and given warnings due to numerous complaints the County received about her work. *See* Defendants' Ex. "U".

Accordingly, any incidents alleged to have occurred prior to November 16, 1991 are time-barred.

### 2. Timeliness of Section 1983 Claims

█ In New York, claims pursuant to 42 U.S.C. § 1983 must be brought within three years. *Murphy v. Lynn,* 53 F.3d 547, 548 (2d Cir.1995). Plaintiff does not claim any tolling of the statute of limitations and, therefore, any conduct occurring prior to December 11, 1993 (three years prior to the commencement of this action) is time barred for purposes of her § 1983 claim.

### D. Whether Plaintiff's Allegations in the Complaint are Reasonably Related to the EEOC Charges

Defendants next argue that certain of the alleged instances of sexual discrimination asserted in this lawsuit are not reasonably related to the EEOC charges and, thus, are not properly before the Court. More specifically, defendants maintain that plaintiff's 1992 EEOC charge alleged that she was subjected to incidents of sexual harassment and that her work performance has been more closely scrutinized than that of her male co-workers, and that the 1994 charge complains of the incident whereby Russell walked in on plaintiff while she was in the bathroom and that

March 1990 wherein they were warned that incidents of sexual harassment would not be tolerated.

defendants retaliated against her for filing the 1992 charge by initiating disciplinary charges on April 29, 1993. According to defendants, the incidents regarding Quanta, any instances involving Russell other than the bathroom incident, and any claims of retaliation regarding disciplinary charges other than those preferred against her on April 29, 1993, are not reasonably related to the EEOC charge. Plaintiff responds that her factual allegations derive from the same nucleus of facts and, thus, the incidents raised in this lawsuit are all reasonably related to the EEOC charges.

 "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of New York Housing Preservation and Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) (citing *Stewart v. I.N.S.*, 762 F.2d 193, 198 (2d Cir.1985); *Almendral v. New York State Office of Mental Health*, 743 F.2d 963, 967 (2d Cir.1984); *Goodman v. Heublein, Inc.*, 645 F.2d 127, 131 (2d Cir. 1981); *Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2d Cir.1980)). The purpose of the exhaustion requirement is to "encourage settlement of discrimination disputes through conciliation and voluntary compliance." *Butts*, 990 F.2d at 1401. The filing requirement provides notice to the party charged with a violation and gives that party an opportunity to comply with Title VII before the commencement of a lawsuit and to participate in conciliation. *Davis v. Weidner*, 596 F.2d 726 (7th Cir. 1979).

The Second Circuit has "recognized three kinds of situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action."

*Butts*, 990 F.2d at 1402. Those situations are: (1) "claims not raised in the charge . . . where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Butts*, 990 F.2d at 1402 (quoting *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d Cir.1978)); (2) a claim alleging retaliation by an employer against an employee for filing an EEOC charge, see *Butts*, 990 F.2d at 1402; and (3) "where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.*

 Here, the 1992 EEOC charge alleges in broad fashion that "I have been subjected to incidents of sexual harassment as the only female employee in my area." Defendants' Ex. "E". The charge goes on to say that "my work performance has been more closely scrutinized and criticized than that of male co-workers." *Id.* This charge does not provide any specificity as to any other types or forms of discrimination. Plaintiff elaborated upon this charge in her February 5, 1993 letter to the DHR wherein she alleged that she found pornographic pictures and a condom in her locker in March 1990, Russell threw paper on the ground and required her to clean them up in January 1992, she fell in the broken chair in August 1990, and that she heard Russell tell George Harvey to fire her in March 1992.[3]

The 1994 EEOC charge alleges that Russell "is constantly watching [plaintiff]," that he "used a key to open the door to the bathroom [she] was using," that Russell treats other male employees differently, that she was forced to "use the bathroom in the shop which is used by about 23 males [but was then] given [ ] a written list of bathrooms which [she is] allowed to use," and "[she] ha[s] been served with two

---

3. As previously discussed, the allegations regarding the condom, the pornographic pic-

tures, and the broken chair are time barred.

unjustified charges of alleged Misconduct [in retaliation for filing the 1992 EEOC charge]."

Neither the DHR charges nor any supplementary information provided in connection therewith make allegations of dirty jokes, being kissed or grabbed by her supervisor, of having her chair pushed next to Russell, of being exposed to poison ivy, that she was given a picture of a man dressed only in his underwear, or that Quanta placed a "men only" sign on the shop door, exposed himself, made sexual innuendos, stuffed a rag in her mouth and engaged in other inappropriate behavior. Accordingly, the Court finds that much of the conduct alleged in this litigation does not fall within the scope of the DHR or EEOC investigations that would reasonably be expected to grow out of the plaintiff's charges of discrimination. *See Butts*, 990 F.2d at 1402.

A reading of the charges themselves reveals that plaintiff was primarily complaining that she was being treated differently than her male co-workers on account of her sex and that she was retaliated against for filing a charge of discrimination; not that she was subjected to a hostile work environment. Arguably, portions of the supplemental information provided by plaintiff in connection with the 1992 charge and the 1994 charge itself could be read as a complaint of a hostile work environment. However, it is clear that the crux of plaintiff's charges of discrimination was that she was being treated differently than male workers. In fact, this is precisely how the DHR and EEOC treated plaintiff's complaint. Furthermore, the primary incidents of a hostile work environment alleged in the DHR charges (the condom and pornographic pictures incidents) were clearly time barred because they were alleged to have occurred prior to March 26, 1990. Neither the DHR nor EEOC

could be expected to investigate time barred allegations of a hostile work environment. The DHR and EEOC investigations focused on whether plaintiff was being treated equally in the terms, conditions and privileges of her employment; that is, whether she was subjected to stricter performance requirements or additional charges of misconduct on account of her gender. Plaintiff's conclusory allegations of "sexual harassment" are insufficient to give the defendants notice of the many incidents of a hostile work environment that she is now asserting in this lawsuit. *See Cooper v. Xerox Corp.*, 994 F.Supp. 429, 432 (W.D.N.Y.1998). Accordingly, the Court finds that the following incidents are not reasonably related to an EEOC charge and, thus, will not be considered: (1) having her chair pushed next to Russell (although difficult to discern how this constitutes sexual harassment, it is unrelated to any timely allegations in the DHR charges because neither charge alleges inappropriate conduct of this type by co-workers), (2) dirty jokes (neither charge makes any reference to continuous inappropriate conduct by co-workers), (3) poison ivy (while difficult to discern how plaintiff's contracting poison ivy constitutes a hostile work environment, it certainly is unrelated to any charge of discrimination), (4) Quanta exposing his buttocks (neither EEOC charge makes timely references to sexually explicit conduct by co-workers, co-workers exposing themselves, and certainly make no reference to Quanta) [4], (5) Quanta making sexually suggestive comments (same), (6) Quanta cornering plaintiff with his cart (same), (7) Quanta placing a "men only" sign on the shop door (same), (8) Quanta stuffing a rag into plaintiff's mouth (same), (9) Quanta tailgating plaintiff in his car (same, plus, this occurred outside of work),

4. Furthermore, this is conduct of which plaintiff was aware prior to her filing the 1994

EEOC charge, but failed to include in that charge.

and (10) Sprague being told not to talk or associate with plaintiff.

The above alleged incidents similarly are not further incidents of discrimination carried out in precisely the same manner as that alleged in the EEOC charge. For example, the alleged incidents involving Quanta in 1996 through 1998 are completely unrelated to any purported methods of discrimination in the EEOC charges and, thus, are not further incidents of discrimination carried out in the same manner as those alleged in the EEOC charge.

Next, the Court rejects defendants' contention that any disciplinary charges filed against plaintiff other than those preferred on April 29, 1993 are not reasonably related to the EEOC charge. Any instances whereby disciplinary charges were allegedly filed against plaintiff in retaliation for filing an EEOC charge or complaining of harassment, or any other alleged instances of retaliation after the filing of the 1992 EEOC charge, are reasonably related to the EEOC charge and, thus, properly before the Court. *See Butts*, 990 F.2d at 1402.

### E. Plaintiff's Sexual Discrimination Claim

 In a sexual discrimination claim pursuant to Title VII, the Court must apply the familiar burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). *See Kerzer v. Kingly Manufacturing*, 156 F.3d 396, 400 (2d Cir.1998). Under this framework, plaintiff must first satisfy her *de minimis* burden of establishing a prima facie case of discrimination. *Id.*, at 401. "If the plaintiff demonstrates a prima facie case, a presumption that the employer unlawfully discriminated against the employee is raised, and the burden of production then shifts to the employer to articulate a legitimate, clear, specific and non-discriminatory reason for its actions. If the employer satisfies this burden, the presumption raised by the establishment of the prima

facie case is rebutted and the burden is then on the plaintiff to show by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination." *Id.* (internal citations and quotations omitted).

### 1. Whether Plaintiff Has Established a Prima Facie Case of a Hostile Work Environment

Defendants contend that plaintiff's allegations, even if assumed to be true, are not sufficiently severe or pervasive to constitute a hostile work environment. It is defendants assertion that plaintiff's claims are isolated and sporadic. Plaintiff responds that the specific instances of sexual harassment, together with the frequency and number of complaints, warnings, counseling, and misconduct charges lodged against her combined to create a hostile work environment and retaliation. Plaintiff contends that she was subjected to some form of harassment and/or adverse disciplinary action in each and every year she worked for the County.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex ...." 42 U.S.C. § 2000e–2(a). Title VII is not limited to economic or tangible discrimination, but extends to "sexual harassment so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (internal quotations and citations omitted). "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986).

■ To prevail on her hostile work environment claim against defendants, plaintiff must demonstrate: (1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, see *Faragher*, 118 S.Ct. at 2283 n. 1; and (2) that a specific basis exists for imputing the conduct that created the hostile environment to defendants. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997); *see Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir.1996).

■ To be actionable, "[t]he conduct alleged must be severe and pervasive enough to create an environment that 'would reasonably be perceived, and is perceived, as hostile or abusive.' " *Schwapp*, 118 F.3d at 110; *see Faragher*, 118 S.Ct. at 2283. In determining whether an environment is sufficiently hostile or abusive, courts examine all of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Faragher*, 118 S.Ct. at 2283. "Simple teasing, offhand comments, and isolated incidents (unless extremely serious), will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (internal citations and quotations omitted). In other words, Title VII is not to be used as "a general civility code," but is actionable only for conduct sufficiently "extreme to amount to a change in the terms and conditions of employment." *Id.* Pervasiveness and severity are independent and equal grounds on which to support violations of Title VII. *Faragher*, 118 S.Ct. at 2283 (extremely serious isolated incidents may be actionable); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993); *see Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 188, 142 L.Ed.2d 153 (1998); *Quinn*, 159 F.3d

at 768; *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir.1995); *Torres v. Pisano*, 116 F.3d 625, 631 n. 4 (2d Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997).

■ The only remaining incidents properly before the Court include the following: allegations that (1) plaintiff was required to use a bathroom also used by numerous other males (March 1993); (2) plaintiff's work performance was more closely scrutinized than male employees (ongoing); (3) Russell tore up paper, threw it on the ground, and made plaintiff pick up the pieces (January 1992); (4) Russell told Harvey to fire plaintiff (March 1992); (5) Russell entered a bathroom while plaintiff was using it (March 1993); and (6) plaintiff received numerous, unjustified disciplinary charges (ongoing).

After reviewing the totality of the timely allegations of sexual harassment that were included in a DHR or EEOC charge, the Court finds that no fair-minded jury could reasonably conclude that plaintiff was the victim of a hostile work environment. First, as the above-listed dates demonstrate, these incidents are not sufficiently pervasive, but, rather, are sporadic occurrences. Second, a reasonable person would not find the above acts to be sufficiently severe to alter the terms and conditions of their employment or create an abusive work environment. While plaintiff may not have wanted to use a bathroom also used by twenty-three male employees, no reasonable person could conclude that this was so severe as to alter her working conditions. There is no evidence that plaintiff was forced to use this bathroom because of gender-based discrimination. All janitors used that bathroom. Nevertheless, defendants acted reasonably by providing plaintiff with a list of female restrooms that she was permitted to use in order to accommodate any uneasy feelings she may have had about using the same rest room as male employees. Next, while Russell's behavior in tearing up paper, throwing it to the ground, and requir-

ing plaintiff to pick it up may be demeaning and inappropriate, it is not sufficiently severe to constitute a hostile work environment. It is also questionable whether this incident was gender-based. At most, it was an isolated, offensive incident. The incident whereby Russell walked in on plaintiff while she was in the bathroom occurred one year after the paper tearing incident. While this occurrence may also have been humiliating for plaintiff, it is not sufficient evidence of a hostile work environment, but one of a few isolated, embarrassing incidents. The evidence demonstrates that Russell did not believe plaintiff was using the restroom at the time he entered it, but was checking on plaintiff to ensure that she was at her post. Even if this was sufficiently severe, defendants acted responsibly and reasonably by promptly disciplining Russell with a written warning for his actions.

 Lastly, plaintiff's claim that her work was more closely scrutinized and that she received disciplinary charges are insufficient to state a claim for a hostile work environment. *See, e.g., Taylor v. Polygram Records,* 1999 WL 124456, at *16 (S.D.N.Y. Mar.8, 1999). The evidence demonstrates that defendants scrutinized plaintiff's work because of numerous complaints they had received from various individuals, including a Justice of the Supreme Court, about her work. *See* Defendants' Ex. "U." There are many identifiable instances in the record dating from 1988 to 1994 where complaints were made because plaintiff was not properly performing her job, failed to be at her post, failed to abide by safety standards, damaged property, and engaged in inappropriate contact with court personnel and others. *See generally,* Def. Ex. "U.". In fact, some of these deficiencies are noted in her work evaluations. No reasonable person would feel that this constituted hostile or abusive conduct. It is difficult to discern how any of these instances, even in the aggregate, unreasonably interfered with plaintiff's job performance. *See Brown v. Coach Stores, Inc.,* 163 F.3d 706, 713 (2d Cir.1998). The Court, therefore, finds that no fair minded jury could reasonably conclude that plaintiff endured a work environment sufficiently severe or pervasive to alter her working conditions thereby constituting a hostile work environment.[5]

---

5. Even if plaintiff did suffer a hostile work environment, there is no basis for imputing liability to defendants because they exercised reasonable care to prevent and promptly correct any alleged sexual harassment. "When a 'co-employee'—as distinct from a supervisor—is alleged to have engaged in harassing activity, the 'employer will generally not be liable unless the employer either provided no reasonable avenue of complaint or knew of the harassment but did nothing about it.'" *Quinn,* 159 F.3d 759, 766 (quoting *Tomka v. Seiler,* 66 F.3d at 1305); see 29 C.F.R. § 1604.11(d) ("With respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer ... knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action."). On the other hand, employers are presumptively liable for all acts of harassment perpetrated by an employee's supervisor. *Quinn,* 159 F.3d at 767 (citing *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998), and *Faragher v. City of*

*Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2292–93, 141 L.Ed.2d 662 (1998)). "However, the employer will avoid liability if it can plead and prove, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and promptly correct any sexual harassment by such a supervisor, and (2) the employee unreasonably failed to avail herself of any corrective or preventative opportunities provided by the employer or to avoid harm otherwise." *Id.*

Here, the only timely allegations of harassment properly before the Court that plaintiff reported was the incident when Russell walked in on her while she was in the bathroom. In response, the County issued a written reprimand to Russell. There is no evidence that plaintiff took advantage of the County's sexual harassment policy to complain of any other instances of harassment properly before the Court.

In fact, the evidence demonstrates that defendants took adequate remedial steps whenever plaintiff complained of sexual harassment. For example, in response to plaintiff's complaints that she found a condom and por-

## 2. Whether Plaintiff Has Established a Prima Facie Case of Retaliation

Defendants move to dismiss plaintiff's retaliation claim asserting that she has not suffered an adverse employment action and there is no causal connection between the protected activity and any adverse employment action. Plaintiff responds that the numerous disciplinary· charges lodged against her constitute adverse employment actions and that "she has come forward with sufficient facts to establish the existence of . . . retaliation in violation of Title VII." Pl. Mem. of Law, at 8.

 To establish a prima facie case of retaliation in violation of Title VII, plaintiff must show (1) that she engaged in a protected activity, (2) that she suffered an adverse employment decision, and (3) that there was a causal link between the protected activity and the adverse decision. *Quinn,* 159 F.3d at 768. The parties do not dispute that plaintiff engaged in a protected activity.

To satisfy the second prong, plaintiff must demonstrate that she suffered "a materially adverse change in the terms and conditions of employment." *Torres,* 116 F.3d 625, 639 (quoting *McKenney v. New York City Off–Track Betting Corp.,* 903 F.Supp. 619, 623 (S.D.N.Y.1995)). "[N]ot every unpleasant matter short of [discharge or demotion] creates a cause of

action for retaliatory discharge." *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 465 (2d Cir.1997) (quoting *Welsh v. Derwinski,* 14 F.3d 85, 86 (1st Cir.1994)).

 Here, plaintiff was served with misconduct charges on April 3, 1992 (lack of attention to work, disrupting co-workers, away from post, disregard for rules and supervisors' instructions, disregard of supervisor's instructions)[6], February 17, 1993 (away from assigned post), April 16, 1993 (failure to properly clean water on floor, improper use of phone for personal use)[7], February 14, 1995 (improperly closing restrooms at airport, vacuuming at airport while passengers were in the area, failure to follow security procedures at airport, failure to follow security procedures before boarding plane, improperly removing food from cafeteria, entering male rest room without knocking first, removing task assignment work list, taking excessive breaks)[8], February 2, 1996 (away from post, disregard of supervisor's instructions)[9], April 4, 1996 (inappropriately reading papers in the course of her cleaning duties), July 9, 1996 (away from post, away from post, failure to wear proper uniform, taking excessive break, interfering with duties of jail officials), September 9, 1996, September 16, 1996 (disregard of supervisor's instructions), and August 16, 1997 (theft of County property)[10]. As a

nographic picture in her locker (a claim that is not properly before the Court because it is time barred), defendants investigated the matter and, unable to determine who was responsible, held a shop meeting warning that incidents of sexual harassment would not be tolerated. With respect to plaintiff's complaints about Quanta (instances that are not reasonably related to her charges of discrimination), defendant took disciplinary action against which resulted in Quanta losing ten days vacation and being required to attend the Employee Assistance Program. *See* Def. Exs. "J," "K," "L," and "M."

6. An agreement was struck whereby plaintiff agreed to a fine equivalent to five days pay.

7. After an arbitration hearing, plaintiff was found not guilty of these charges.

8. After arbitration, plaintiff was found guilty only of those counts charging her with entering the male rest room without first making an announcement and taking excessive breaks. In light of plaintiff's repeat behavior and failure to positively respond to prior counseling and progressive discipline, the arbitrator recommended 3 months disciplinary suspension without pay.

9. The arbitrator found plaintiff not guilty of charge # 1 and minimally guilty of charge # 2 and awarded a penalty of the 30–day suspension already served. *See* n. 4.

10. Plaintiff failed to respond to the arbitrator who, therefore, closed his file on the matter. The County wrote plaintiff a letter dated May 7, 1998 stating that "[t]he County considers your lack of response and failure to communi-

result of some of the misconduct charges, plaintiff was suspended from duty without pay. This is sufficient to constitute adverse employment action. *See Biolchini v. General Elec. Co.*, 167 F.3d 1151, 1153 (7th Cir.1999) (one week suspension constitute adverse employment action for purposes of ADEA); *Alvarez–Fonseca v. Pepsi Cola of Puerto Rico Bottling Co.*, 152 F.3d 17, 26 (1st Cir.1998); *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998).

■ Looking at the evidence in the light most favorable to plaintiff, the Court also concludes that she has satisfied her *de minimis* burden of establishing a causal connection between her protected activity and the adverse employment action. The temporal proximity between the ongoing DHR investigations and the filing of the misconduct charges together with the fact that plaintiff's supervisor, Russell, was named in the DHR charge and also was partially responsible for initiating the misconduct charges against plaintiff and placing warnings in plaintiff's personnel file is sufficient to permit an inference of discrimination. *See Quinn*, 159 F.3d at .769–70; *Sumner v. United States Postal Serv.*, 899 F.2d 203, 208 (2d Cir.1990).

■ Having established a *prima facie* case of retaliation, there is a presumption of discrimination and the burden shifts to defendants to articulate a legitimate, non-discriminatory basis for its actions. *See Hollander v. American Cyanamid Co.*, 172 F.3d 192, 199 (2d Cir.1999); *Kerzer*, 156 F.3d at 401. Defendants assert that misconduct charges were lodged against plaintiff and she was suspended because she repeatedly failed to follow instructions and perform her assigned work. In support, defendants supply numerous complaints filed by third-persons regarding plaintiff's work for the County. Defendants also cite to certain of the arbitrators' decisions wherein they found plaintiff guilty of some

of the misconduct charges. Defendants also demonstrate that plaintiff had to be reassigned because of problems she was having performing her work. This is sufficient evidence to satisfy defendants' burden in the *McDonnell Douglas* scheme. *Id.*, .172 F.3d 192, 199–200; *Quinn*, 159 F.3d at 769; *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir.1998); *Hollander v. Amer. Cyanamid Co.*, 895 F.2d 80, 83 (2d Cir.1990).

The burden, therefore, shifts back to plaintiff to establish by a preponderance of the evidence that the reasons proffered by defendants are a pretext for unlawful discrimination. *See Kerzer*, 156 F.3d at 401. "An employer's reason for termination cannot be proved to be a pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" *Id.* (quoting *Hicks*, 113 S.Ct. at 2752). "In the summary judgment context, this means 'that the plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for [taking an adverse employment action against] her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Id.* (quoting *Gallo*, 22 F.3d at 1225).

Plaintiff does not spend any time in her memorandum of law arguing pretext. However, parsing through her papers, it appears that she believes defendants' reasons to be pretextual because no other male employees were subjected to the same intensity or scrutiny and frequency of discipline as plaintiff and that Russell, who was identified in the DHR charge, also was partly responsible for initiating the misconduct charges against her.

Defendants have submitted affidavits and documentary evidence demonstrating

cate with the Arbitrator to be a waiver of your right to a hearing pursuant to the collective bargaining agreement .... Therefore, you are

terminated ... effective ... May 7, 1998." This charge was lodged against plaintiff after the commencement of the instant litigation.

that male janitors were disciplined for similar types of misconduct, were subjected to the same progressive discipline, and that male janitors have been terminated for poor work performance. *See* Brennan Aff., at ¶ 16; Def. Ex. "X." Despite plaintiff's work evaluations which, overall, indicate that she performed well at her job, the evidence overwhelmingly demonstrates that she was repeatedly away from her post, disregarded supervisors' orders, and otherwise engaged in misconduct. In fact, some of plaintiff's work evaluations also indicated that she is often away from her post. *See* Pl.Ex. "11." Third persons, including, among others, a Justice of the Supreme Court, an Assistant Broome County District Attorney, and the Deputy Commissioner of Aviation of the Binghamton Regional Airport, complained about plaintiff's work performance. Furthermore, the evidence demonstrates that plaintiff had received misconduct charges, written warnings, and complaints about her work performance before she ever complained of sexual harassment. *See* Def. Exs. "O," "R" (1990 misconduct charge for leaving work station "despite previous warnings"), "U" (various verbal and written warnings and complaints from third parties filed in plaintiff's personnel file in 1988 and 1989). Some of these misconduct charges were upheld by an arbitrator and, as a result, plaintiff was suspended for a thirty day period.[11] In light of the foregoing evidence, the fact that Russell may have participated in the decisions to file misconduct charges against plaintiff is insufficient to enable a fair minded jury to conclude by a preponderance of the evidence that defendants proffered reasons for disciplining plaintiff were a pretext for unlawful discrimination.[12] *Compare, Quinn,* 159 F.3d at 770 (finding triable issue of fact where there was a strong temporal relationship between the charges of discrimination and discharge and nearly all the record evidence supporting the defendant's asserted non-retaliatory reason for discharge was generated by two of plaintiff's alleged harassers). Accordingly, plaintiff's Title VII claim must fail.[13]

### F. Section 1983 Claims

Plaintiff also asserts a claim pursuant to 42 U.S.C. § 1983 claiming that she was denied her equal protection right to be free from gender discrimination and that she was retaliated against for exercising her First Amendment rights. Defendants move to dismiss these claims asserting similar defenses previously discussed in connection with the Title VII claim. Defendants also claim that plaintiff has failed to establish a custom or policy and, therefore, the County may not be held liable.

Plaintiff counters that defendants failed to properly discipline employees responsible for sexual harassment, Defendant Brennan brought unsubstantiated misconduct charges against plaintiff in 1996, Brennan brought the misconduct charges against plaintiff shortly after she filed her second EEOC charge, the County acquiesced in this discrimination and harassment during the entire course of plaintiff's employment with the County, and that the County retaliated against her for complaining of harassment and filing charges of discrimination with the DHR and EEOC.

---

**11.** The arbitrators also noted plaintiff's history of poor work performance. *See* Pl.Ex. "14", at 21 (Oct. 31, 1995) ("The acts of misconduct for which the grievant has been found guilty in the present matter would be deemed minor in nature *if* this were the first occurrence of misconduct .... However, this is the third occurrence and the grievant has not responded favorably to prior counselings [sic] and measures of progressive discipline.").

**12.** In fact, the evidence before the Court demonstrates that while Russell may have issued verbal or written warnings to plaintiff, Brennan instituted all the misconduct charges.

**13.** Plaintiff agrees that the Title VII claim against Brennan individually should be dismissed.

A § 1983 claim has two essential elements: (1) that the defendants acted under color of state law; and (2) that plaintiff suffered a denial of her federal statutory or constitutional rights or privileges as a result of defendants' actions. *See Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir.1998).

### 1. Equal Protection Claim

Individuals have a constitutional right under the equal protection clause to be free from sex discrimination in public employment. *See Annis v. County of Westchester*, 36 F.3d 251, 254 (2d Cir.1994) (citing *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 2271, 60 L.Ed.2d 846 (1979)). While sexual harassment does not necessarily rise to the level of a constitutional violation, "harassment that transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort." *Annis*, 36 F.3d at 254 (citing *Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d Cir.1994)). Similarly, "[c]reating abusive conditions for female employees and not for male employees is discrimination." *Bohen v. City of East Chicago, Indiana*, 799 F.2d 1180, 1185 (7th Cir.1986). "[T]he ultimate inquiry is whether the sexual harassment constitutes intentional discrimination. This differs from the inquiry under Title VII as to whether or not the sexual harassment altered the conditions of the victim's employment." *Id.*, at 1187. "[A] plaintiff can make an ultimate showing of sex discrimination either by showing that sexual harassment that is attributable to the employer under § 1983 amounted to intentional sex discrimination or by showing that the conscious failure of the employer to protect the plaintiff from the abusive conditions created by fellow employees amounted to intentional discrimination." *Id.; see Gierlinger*, 15 F.3d 32, 34. "It is a good defense, however, if the employer can show that the harassment suffered by the plaintiff was directed at the plaintiff because of factors personal to her and not because she is a woman." *Id.* at 1187.

Because there is no exhaustion requirement under § 1983, the Court may consider all post December 11, 1993 conduct, regardless of whether it was asserted in, or related to, an EEOC charge.

Plaintiff primarily focuses on Brennan's alleged failure to properly discipline Quanta for his conduct in the early 1990s and in 1997. The first alleged incident involving Quanta occurred in 1993 when he allegedly exposed his buttocks to plaintiff. However, it is undisputed that plaintiff failed to report this incident to a supervisor. *See* Def. Rule 7.1(a)(3) stmt., at 14; Pl. Rule 7.1(a)(3) stmt., at 10; Harvey Aff., at ¶ 9; Brennan Aff., at ¶ 12. Another alleged incident involving Quanta was his showing plaintiff a picture of a man in his underwear.[14] Again, the undisputed evidence is that plaintiff did not report this to a supervisor. *See* Def. Rule 7.1(a)(3) stmt., at ¶ 14[15], Harvey Aff., at ¶ 9; Brennan Aff., at ¶ 12. Because these acts were alleged to have been committed by a non-defendant co-worker and plaintiff failed to report them to a supervisor, they cannot form the basis of intentional discrimination by defendants or demonstrate a failure by defendants to protect plaintiff from abusive conditions.

Plaintiff next alleges that the County transferred Quanta to the Broome County Jail where plaintiff was working, despite the fact that Quanta had harassed plaintiff when they worked together at the Broome County courthouse. Again, however, the undisputed evidence is that plaintiff did not report these incidents and the County was unaware of any problems plaintiff may have had with Quanta while they both

---

**14.** This picture is actually an advertisements for the "Tactics Boxer" and is no more sexually suggestive or offensive than similar advertisements routinely found in newspaper, magazine, and television ads.

**15.** It should be recalled that plaintiff failed to comply with N.D.N.Y. L.R. 7.1(a)(3) and, therefore, the facts in defendants' 7.1(a)(3) statement are deemed admitted.

worked at the courthouse. *See* Def. Rule 7.1(a)(3) stmt., at ¶ 21. Thus, this is not a basis for holding defendants liable under § 1983.

Plaintiff also alleges that Quanta made sexually suggestive comments throughout the years 1996 to 1998 and that she complained about this to Dakin. Quanta unquestionably engaged in inappropriate behavior towards plaintiff in early 1997. However, upon learning of Quanta's conduct, the County took appropriate action. First, Dakin verbally counseled Quanta about making inappropriate comments to plaintiff. Then, when Quanta continued to act inappropriately, in February and August 1997, the County filed misconduct charges against Quanta for his conduct toward plaintiff which resulted in his losing ten days vacation time and his being required to attend the Employee Assistance Program for sexual harassment counseling. There is no evidence of further inappropriate conduct by Quanta after he was disciplined and, thus, no reasonable minded jury could conclude that, once the County reasonably became aware of Quanta's conduct toward plaintiff, it County failed to take appropriate action and protect plaintiff from gender-based discrimination.

Plaintiff next claims that she was denied the equal protection of the laws because she received numerous unsubstantiated misconduct charges, that some of these charges were brought shortly after she filed a charge of discrimination with the EEOC, and no male employees in plaintiff's unit were subject to the same types of disciplinary action.

In the above discussion addressing plaintiff's Title VII claim, the Court already addressed plaintiff's allegations that defendants harassed her and discriminated against her by filing numerous misconduct charges. The evidence demonstrated that the alleged harassment suffered by the plaintiff was directed at her because of poor work performance and not because she is a woman, and no fair minded jury could conclude otherwise. *See* discussion *supra* at 324, 326 – 327. Defendants received numerous complaints regarding plaintiff's work from the Sheriff's Department, the County Airport, the District Attorney's Office, a Supreme Court Judge and others, some of which were before plaintiff first complained of sexual discrimination. Although, as plaintiff asserts, many of the misconduct charges were dismissed at arbitration, some of the misconduct charges were sustained and plaintiff was suspended as a result of her repeat offenses.

Finally, plaintiff claims discrimination because she received discipline while her male counterparts did not. This allegation also is unsupported by the evidence. Defendant has submitted documentary evidence that male employees in her unit were disciplined for the same type of misconduct for which plaintiff was disciplined. For example, there is evidence that male employees were disciplined for: being away from the work area, overuse of sick time, talking instead of working, and making inappropriate comments. *See* Pl.Ex. "36," Def. Ex. "X,", and Brennan Aff., at ¶ 16. The evidence further demonstrates that male employees were subject to the same progressive discipline systems as was plaintiff. *See id.* Plaintiff, on the other hand, is unable to point to any instances whereby a male employee was not subjected to the same type of progressive discipline or was not disciplined for similar conduct.

In sum, there simply is insufficient evidence of "coarse, hostile, [or] boorish behavior," disparate treatment, or other discriminatory conduct sufficient to give rise to a deprivation of plaintiff's rights under the Equal Protection Clause. Even if plaintiff was subjected a hostile work environment, there is no basis for imputing liability to defendants because they took reasonable action to protect plaintiff once they became aware of her complaints.

### 2. First Amendment Retaliation Claim

Plaintiff's claim under § 1983 for a violation of her First Amendment rights must be dismissed. The purported pro-

tected speech is plaintiff's complaints of sexual harassment and her DHR and EEOC charges. "[W]hen an employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of a personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). "Had [plaintiff's] complaints to her supervisors implicated system-wide discrimination they would have unquestionably involved a matter of 'public concern.'" *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 143 (2d Cir.1993), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). "Here, however, there has been no violation of the First Amendment, because plaintiff's complaints were 'personal in nature and generally related to her own situation.'" *Id.* (quoting *Ezekwo v. NYC Health & Hospitals Corp.,* 940 F.2d 775, 781 (2d Cir.), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991)). "[T]here is no indication that the plaintiff 'wanted to debate issues of sex discrimination,' that her suit sought 'relief against pervasive or systemic misconduct by a public agency or public officials,' or that her suit was 'part of an overall effort ... to correct allegedly unlawful practices or bring them to public attention.'" *Id.* (quoting *Yatvin v. Madison Metro. School Dist.,* 840 F.2d 412, 420 (7th Cir.1988)); *see Lehmuller v. Incorporated Village of Sag Harbor,* 944 F.Supp. 1087, 1095 (E.D.N.Y.1996) (filing of EEOC charge is purely personal and not protected speech).

### III. CONCLUSION

For the foregoing reasons, plaintiff's Complaint is dismissed in its entirety.

**IT IS SO ORDERED**