James M. QUINN, Plaintiff,

v.

NASSAU COUNTY POLICE DEPARTMENT; Donald Kane; Phillip Rice; Joseph H. Allen; Edward Gonzalez; Daniel Lishansky; and John Ryan, Defendants.

No. 97CV3310(ADS).

United States District Court,
E.D. New York.

June 28, 1999.

Leeds & Morelli, Carle Place, NY, by Fredric D. Ostrove, Susan Fitzgerald, of counsel, for plaintiff James M. Quinn.

McCabe, Collins, McGeough & Fowler, LLP, Mineola, NY, by Chris P. Termini, of counsel, for defendants Nassau County Police Department, Donald Kane, Joseph H. Allen, Edward Gonzalez, and Daniel Lishansky.

Mulholland, Minion and Roe, Williston Park, NY, by Ronald J. Morelli, of counsel, for defendant Phillip Rice.

Alan J. Reardon, Carle Place, NY, for defendant John Ryan.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff, a homosexual man and a former Nassau County police officer, claims that his fellow police officers and supervisors embarked on a vicious campaign of harassment against him because of his sexual orientation, in violation of 42 U.S.C. Sections 1983 and 1985. During a three-week jury trial, the plaintiff testified that approximately a year after he joined the police force in 1986, other officers learned he was gay and over a nine-year period, tormented him with pornographic cartoons and photographs, anti-gay remarks, and barbaric "pranks." The plaintiff further testified that his supervisors at the police department knew of the harassment but did nothing to stop it, and that some supervisors even joined in the harassment. The jury awarded him the total sum of $380,000 in compensatory and punitive damages.

This opinion embodies the Court's oral decision, which it rendered off-the-bench with respect to the following: (1) all of the defendants' pre-verdict motions for judgment as a matter of law as to liability under Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 50; (2) the defendant Ryan's post-verdict motion for judgment as a matter of law as to liability; and (3) all of the defendants' post-verdict motions to reduce the $250,000 emotional distress component of the jury award on the ground that it is excessive.

While this opinion addresses several issues, the central question confronting the Court is whether government employees who are homosexual may be singled out for discrimination and abuse in the workplace because of their sexual orientation. In the Court's view, the United States Constitution and the provisions of 42 U.S.C. § 1983, combined with logic, common sense and fairness dictate the answer: individuals have a constitutional right under the Equal Protection Clause to be free from sexual orientation discrimination causing a hostile work environment in public employment.

### I. BACKGROUND

In setting forth the salient facts of this case, the Court views the evidence in a light most favorable to the plaintiff, and grants him every reasonable inference that the jury might have drawn in his favor (*see*

*Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 203 [2d Cir.1998] [quotation omitted] ), as is required when deciding the defendants' Rule 50 motions for judgment as a matter of law dismissing the complaint.

The plaintiff, James M. Quinn ("Quinn" or the "plaintiff"), a former Nassau County Police Officer, initiated this action under 42 U.S.C. Sections 1983 and 1985 against the Nassau County Police Department (the "Police Department"), Nassau County Police Commissioner Donald Kane ("Kane" or the "Commissioner"), his former supervisors Lieutenant Edward Gonzalez ("Gonzalez"), Deputy Chief Daniel Lishansky ("Lishansky"), Sergeant John Ryan ("Ryan"), Lieutenant Joseph Allen ("Allen"), and his former co-worker, Police Officer Phillip Rice ("Rice").

Quinn began working as a police officer for the Nassau County Police Department in 1986. Quinn testified that he learned to keep his sexual orientation to himself during his first days of training at the Police Academy, after his supervisors "snickered" when discussing homosexuals during a "sensitivity training" workshop. From then on, Quinn vowed to keep his sexual orientation hidden from his colleagues.

However, his secret was revealed on July 4, 1987, when police officers from the First Precinct, where Quinn was assigned, arrested an assistant district attorney for engaging in homosexual sex in public. The assistant district attorney told the arresting officers that Quinn, too, was gay. Following this revelation, and until he left the force in 1996, Quinn testified that he was ridiculed, humiliated, abused and singled-out because of his sexual orientation.

For example, fellow officers regularly and frequently posted cartoons about Quinn from the time he was unwillingly "outed" through January 1995, when he was transferred to another precinct. At least 19 of these cartoons were put into evidence at the trial. In the cartoons, Quinn is depicted and labeled a homosexual, a child-molester, a transvestite and a sadomasochist. On repeated occasions, Quinn found such cartoons slipped into the pages of the Police Car Book, a book which the officers maintained in the patrol cars for the purpose of leaving official messages and advice for their colleagues.

These cartoons were posted prominently on the bulletin board located in the "32 Room," which many witnesses described as the central hub of the First Precinct. At trial, defendant Rice admitted that he created many of these cartoons. In Rice's opinion, the cartoons were just "silly stuff" he created to try and relieve the "stress and tension" of being a police officer. Rice attempted to defend himself by explaining that he treated everyone unfairly, and that "everyone" was made "fun of" on the 32 Room bulletin board.

In addition to the cartoons, Quinn testified about other anti-gay incidents at the First Precinct. Fellow officers hid his uniform and equipment. His colleagues put rocks in the hub caps of his police car so that criminals would hear his noisy approach. On one occasion, Quinn found a night stick in his patrol car with the words "P.O. Quinn's dildo" carved into the stick.

Quinn testified that his supervising officers were aware of this harassment, ignored it, and refused to take any action to discourage future occurrences. Rice supported Quinn's testimony in this respect, and told the jury that no supervisor ever asked him to stop making the cartoons about Quinn or to remove these items from the 32 Room bulletin board, even though supervisors "probably" saw them and laughed at them. Rice agreed that his cartoons about Quinn were an accepted practice at the precinct.

Some of the supervisors admitted that they saw these cartoons in open view in the precinct and Police Car Books, and did nothing about them. Specifically, Ryan conceded at his deposition that he saw some of the cartoons posted in the First Precinct 32 Room, where "everyone" who worked in the First Precinct regularly went because it was "one of the main

rooms." Quinn and an independent witness, Sergeant Edward P. Reilly, testified that Ryan also made comments about Quinn's sexual orientation, for example, by calling him a "dick smoker." Sergeant Reilly heard Ryan make other negative comments about homosexuals. During a retirement party dinner, Ryan smacked Quinn on the back of his head and said that he "didn't care" what his sexual preference was.

Then Lieutenant, now Captain Allen acknowledged seeing the posted cartoons depicting Quinn as gay, although he did not recall seeing the specific cartoons introduced into evidence at trial. Significantly, however, when he was shown some of the cartoons at trial, Allen stated that he did not view them as offensive, and that he would not have felt obligated to remove them from the 32 Room bulletin board had he seen them posted there.

Quinn also told the jury that he was treated differently from his fellow officers with regard to the manner in which his superiors "over-supervised" him. Specifically, Quinn alleged that supervisors such as Ryan and Allen would unfairly criticize him, nit-pick his work, and direct him to rewrite his paperwork without any valid reason. Sergeant Ryan also would "ride" many of Quinn's calls, meaning that he would personally follow and observe Quinn responding to calls and performing his official duties. Lishansky testified that this was uncommon. According to Ryan and Allen, they treated Quinn in this manner because of his work performance and repeated lateness.

There was evidence of actual knowledge of this systematic harassment by Quinn's supervisors. On several occasions, Quinn complained to Precinct Commander Lishansky about Ryan and Allen "over-supervising" him. In response, Lishansky asked the supervisors to "cut him some slack," and at one point changed Quinn's squad so that he would only periodically have to work with Allen. In addition, Quinn wrote a letter to Police Commission-er Kane complaining of "unfair treatment and harassment." The Commissioner concededly took no action with regard to the plaintiff's complaint.

Quinn told the jury that the harassment accelerated when, on or about January 20, 1995, he became the target of a baseless investigation by the Internal Affairs Unit of the Nassau County Police Department, resulting in his involuntary transfer to the Fourth Precinct, the furthest precinct from his home. During this investigation, Quinn's car was followed by shifts of unmarked police cars. Notwithstanding this intensive investigation, to this date, no formal charges ever were filed against Quinn.

According to Quinn, soon after his transfer, members of the First Precinct spread the word to the Fourth Precinct officers that they should "watch out for Quinn." Quinn alleges that his mistreatment continued at the Fourth Precinct.

On about May 29, 1995, Quinn was involuntarily transferred on a "temporary" basis—and eventually on a permanent basis—from the Fourth Precinct to the less proactive Court Liaison Office. The plaintiff eventually left the police force in December 1996, due to a line-of-duty back injury. When the plaintiff ended his employment, the Police Department refused to grant him termination pay, which is provided to officers upon completion of employment. He was not given his termination pay because of the pending "charges" against him. As stated above, these "charges" are still pending, and may never be resolved.

Based on this factual scenario, substantially conceded by the defendants, Quinn raised the following causes of action: (1) Section 1983/Equal Protection; (2) Section 1983/First Amendment; and (3) Section 1985/Conspiracy. The Court dismissed the Section 1983 First Amendment claim and submitted the Section 1983 Equal Protection claim and the 1985 Conspiracy claim to the jury. The jury returned a

special verdict, with the following express findings:

The plaintiff proved that, after June 6, 1994 (within the statute of limitations period): (1) the members and supervisors of the Nassau County Police Department committed discriminatory acts demonstrating an ongoing policy or practice of sexual orientation discrimination against the plaintiff; and (2) the members and supervisors of the Nassau County Police Department committed specific and related instances of sexual orientation discrimination against the plaintiff, condoned by the supervisors of the Nassau County Police Department.

The plaintiff proved that in the Nassau County Police Department during the period in question, there was a custom, policy or decision to permit sexual orientation harassment.

The plaintiff proved that he was subjected to severe or pervasive unwelcome harassment by members and/or supervisors of the Nassau County Police Department, that the harassment complained of was based on his sexual orientation, and that the claimed harassment had the effect of unreasonably interfering with his work performance and created an intimidating, hostile or offensive work environment for him.

The plaintiff did not prove that Police Commissioner Donald Kane and Daniel Lishansky knew of the sexual orientation harassment of the plaintiff but did nothing to stop it.

The plaintiff did not prove that the defendant Lieutenant Joseph Allen participated in the sexual orientation harassment of the plaintiff, but did prove that Allen knew of the sexual orientation harassment of the plaintiff and did nothing to stop it.

The plaintiff did not prove that defendant Edward Gonzalez, a Lieutenant in the Fourth Precinct, participated in the sexual orientation harassment of the plaintiff.

The plaintiff proved that defendant Sergeant John Ryan participated in the sexual orientation harassment of the plaintiff, and that he knew of the sexual orientation harassment of the plaintiff but did nothing to stop it.

The plaintiff proved that two or more of the individual defendants in this case were involved in a conspiracy with a purpose to harass the plaintiff because of his sexual orientation; that the action of the defendants in the conspiracy were motivated, in whole or in part, by a disliking or hateful discriminatory attitude toward homosexuals; and that Rice, Allen and Ryan were knowing members of the conspiracy.

The jury awarded Quinn the following: (1) $250,000 for emotional distress; $60,000 for loss of termination pay; (2) $30,000 in punitive damages against defendant Rice; (3) $20,000 in punitive damages against defendant Allen; and (4) $20,000 in punitive damages against defendant Ryan.

## II. DISCUSSION

### A. Motion for Judgment as a Matter of Law: The Standard

Rule 50 of the Federal Rules of Civil Procedure allows a defendant, at any time before the case has been submitted to the jury, to move for judgment as a matter of law. The Court may grant the motion if the non-moving party has failed to adduce a "legally sufficient evidentiary basis" to support his claim. Fed.R.Civ.P. 50(a); *Wimmer v. Suffolk County Police Dept.*, 176 F.3d 125 (2d Cir.1999) (citing *Piesco v. Koch*, 12 F.3d 332, 340 [2d Cir.1993]). Judgment as a matter of law can be granted where there is such a complete absence of evidence that no reasonable juror could find in favor of the non-moving party. *See Samuels v. Air Transp. Local 504*, 992 F.2d 12, 14 (2d Cir.1993). Stated another way, the trial court may only grant such a motion if, "viewed in the light most favorable to the nonmoving party, 'the evidence

is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.'" *Leopold v. Baccarat, Inc.*, 174 F.3d 261 (2d Cir.1999) (quoting *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154–55 [2d Cir.1994]) (quoting, in turn, *Simblest v. Maynard*, 427 F.2d 1, 4 [2d Cir.1970]). In evaluating the merits of the motion, "the court must view the evidence in a light most favorable to the nonmovant and grant that party every reasonable inference that the jury might have drawn in its favor." *Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 203 (2d Cir.1998) (quotation omitted).

The Court will apply these principles in assessing the defendants' motions for judgment as a matter of law.

**B. Section 1983/Equal Protection**

■ Section 1983 provides, in relevant part:

Every person who, under color [of law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. This statute furnishes a cause of action for the violation of federal rights created by the Constitution. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges. *See Eagleston v. Guido*, 41 F.3d 865, 872 (2d Cir.1994); *Warren v. Fischl*, 33 F.Supp.2d 171, 176 (E.D.N.Y.1999). Here, the plaintiff asserts that the defendants, acting under color of state law, violated his constitutional right to Equal Protection.

1. *"Under Color of State Law" Element of a Section 1983 Claim*

As a threshold issue, the Court must address the first of the two elements of a Section 1983 claim, namely, whether the individual defendants acted "under color of state law."

In the Court's view, "[t]here can be no question that defendants [Donald Kane, the Commissioner of the Nassau County Police Department; Lieutenant Edward Gonzalez; Deputy Chief Daniel Lishansky; Sergeant John Ryan; and Lieutenant Joseph Allen] are, in their personal capacities, amenable to suit under [§ 1983], inasmuch as they were conducting themselves as supervisors for a public employer and thus were acting under color of state law." *Annis v. County of Westchester*, 36 F.3d 251, 253–55 (2d Cir.1994) (citing *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 577 [2d Cir.1989]).

■ The more difficult question arises with respect to Police Officer Rice, the self-anointed "roaster" who takes credit for creating many of the abusive and harassing materials at issue. Rice asserts that he was not acting "under color of state law" in creating these materials but, rather, was merely "making fun of homosexuals on a non-official bulletin board located at the Precinct." (Defendant Rice's Unpaginated Mem. of Law dated May 12, 1999, at 1). He maintains that his harassment of Quinn, no matter how crude and constant, was "a private act." The Court is constrained to agree.

The Supreme Court has stated that "[t]he traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (quoting

*United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031 [1941] ). "In a case charging hostile environment ... harassment, 'under color of state law' ordinarily requires that the harasser be a supervisor or have some position of authority or control over the plaintiff." *Galvez v. Means,* No. 95 Civ. 9479, 1996 WL 487962, *3 (S.D.N.Y. Aug.27, 1996) (citing *Woodward v. City of Worland,* 977 F.2d 1392, 1401 [10th Cir. 1992] [holding police officers who sexually harassed dispatcher employed by different government agency not liable under § 1983 absent some authority over dispatcher], *cert. denied,* 509 U.S. 923, 113 S.Ct. 3038 [1993]; *Poulsen v. City of North Tonawanda,* 811 F.Supp. 884, 895 [W.D.N.Y.1993] ). "Otherwise, it is difficult to establish that the abusive action was perpetrated 'under color of state law' rather than as an essentially private act of sexual harassment." *David v. City and County of Denver,* 101 F.3d 1344, 1354 (10th Cir.1996) ("to establish the state action necessary to support a § 1983 [Fourteenth Amendment sexual harassment claim], [the defendant] had to be plaintiff's supervisor or in some other way exercise state authority over her") (quotations and citations omitted), *cert. denied,* —— U.S. ——, 118 S.Ct. 157, 139 L.Ed.2d 102 (1997).

Turning to the facts of this case, the Court finds, as a matter of law, that Rice was only a co-employee of the plaintiff and was not acting "under color of state law." Quinn has not alleged or proven that Rice had any supervisory role or authority over his employment. Accordingly, Quinn fails to state a claim against Rice under 42 U.S.C. § 1983, and Rice's motion for a judgment as a matter of law dismissing the Section 1983 cause of action as against him is granted.

### 2. *Denial of Equal Protection Element of a Section 1983 Claim*

Having addressed the "color of state law" element of a Section 1983 claim, the Court addresses the second element, namely, the showing that as a result of the defendants' actions, the plaintiff suffered a denial of his Equal Protection rights.

### a. *Elements of an Equal Protection Violation*

■ Generally speaking, the Equal Protection Clause of the Fourteenth Amendment directs state actors to treat similarly situated people alike. To establish an Equal Protection violation, a plaintiff must prove purposeful discrimination directed at an identifiable or suspect class. *See Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995). As the Second Circuit explained in *FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992) ("*FSK*"), an Equal Protection violation based upon selective application of a facially lawful state regulation is properly found when: (1) the person, compared with others similarly situated, was selectively treated; and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *See also Crowley v. Courville,* 76 F.3d 47, 52–53 (2d Cir.1996); *Zahra v. Town of Southold,* 48 F.3d 674, 683 (2d Cir.1995); *LaTrieste Restaurant & Cabaret Inc. v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994) (quoting *LeClair v. Saunders,* 627 F.2d 606, 609–10 [2d Cir. 1980], *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418 [1981] ); *Equus Associates, Ltd. v. Town of Southampton,* 37 F.Supp.2d 582, 598 (E.D.N.Y.1999). *FSK* involved a claim that the defendant selectively enforced certain governmental regulations, but *FSK*'s formulation of the elements of an Equal Protection claim has been applied by the Second Circuit to more general allegations of "invidiously motivated selective treatment." *See, e.g., Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1352–53 (2d Cir.1994).

b. *Harassment in the Public Workplace as an Equal Protection Violation*

■ One manifestation of impermissible selective treatment is employment discrimination in the public workplace. For example, it is well-settled in this Circuit that "[s]ex discrimination [by a government employer] is covered by § 1983 [as an Equal Protection violation]." *Annis*, 36 F.3d at 254. In fact, the Supreme Court declared two decades ago that individuals have a constitutional right under the Equal Protection Clause to be free from sex discrimination in public employment. *See Davis v. Passman*, 442 U.S. 228, 234–35, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). In refining this declaration, the Second Circuit has explained that sexual harassment can, under certain circumstances, amount to a constitutional tort. *Annis*, 36 F.3d at 253–55 (citing *Gierlinger v. New York State Police*, 15 F.3d 32, 34 [2d Cir.1994]) ("[I]n some circumstances a § 1983 claim may be properly grounded on a violation of the Equal Protection Clause of the Fourteenth Amendment based on sexual harassment in the workplace."). "Such unjustified unequal treatment is exactly the type of behavior prohibited by the Equal Protection clause as interpreted in *Davis v. Passman*, 442 U.S. 228, 234–35, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)." *Bohen v. City of East Chicago, Ind.*, 799 F.2d 1180, 1186 (7th Cir.1986).

In *Annis* and subsequent cases, the Second Circuit provided guidance regarding the extent to which sexual harassment equals sex discrimination for purposes of Section 1983, and looked to Title VII for guidance in resolving such claims. *See Annis*, 36 F.3d at 254; *see also Genas v. State of New York Dep't of Correctional Services*, 75 F.3d 825, 832 (2d Cir.1996); *Carrero v. New York City Housing Authority*, 890 F.2d 569, 577 (2d Cir.1989). The Second Circuit instructed in *Annis*, a case involving sex discrimination involving a female police officer, that "[w]hile we do not subscribe to a categorical view that

sexual harassment equals sex discrimination, we do agree that harassment that transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort." *Id.* (citing *Gierlinger v. New York State Police*, 15 F.3d 32, 34 [2d Cir. 1994] ["[I]n some circumstances a § 1983 claim may be properly grounded on a violation of the Equal Protection Clause of the Fourteenth Amendment based on sexual harassment in the workplace."] ). The Court elaborated, "[w]hen ... sexual harassment includes conduct evidently calculated to drive someone out of the workplace, the harassment is tantamount to sex discrimination." *Id.*

■ With respect to sexual harassment, a District Court in this Circuit has noted that "[c]reating abusive conditions for female employees and not for male employees is discrimination [under § 1983.]" *Osier v. Broome County*, 47 F.Supp.2d 311, 328 (N.D.N.Y. 1999) (quoting *Bohen v. City of East Chicago, Indiana*, 799 F.2d at 1185). The District Court remarked that "a plaintiff can make an ultimate showing of sex discrimination either by showing that sexual harassment that is attributable to the employer under § 1983 amounted to intentional sex discrimination or by showing that the conscious failure of the employer to protect the plaintiff from the abusive conditions created by fellow employees amounted to intentional discrimination." *Id.* (citing *Bohen*, 799 F.2d at 1187; *Gierlinger v. New York State Police*, 15 F.3d at 34). In this context, "Section 1983 liability can be imposed upon individual employers, or responsible supervisors, for failing properly to investigate and address allegations of sexual harassment when through this failure, the conduct becomes an accepted custom or practice of the employer." *Gierlinger v. New York State Police*, 15 F.3d at 34 (citing *Bohen v. City of East Chicago, Ind.*, 799 F.2d at 1189).

c. *Sexual Orientation Harassment as an Equal Protection Violation*

■ In the Court's view, harassment in the public workplace against homosexuals

based on their sexual orientation falls within the ambit of *Annis* and its progeny. Just as *Annis* recognized that harassment of women in the public workplace that transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort, so too, in the Court's view, does a hostile work environment directed against homosexuals based on their sexual orientation constitute an Equal Protection violation.

In so finding, the Court notes that in 1996, the Supreme Court struck down, on Equal Protection Clause grounds, a state constitutional amendment categorically prohibiting gay men and lesbians from obtaining state or local legal protection from discrimination based on their sexual orientation. *See Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). The *Romer* Court established that government discrimination against homosexuals, in and of itself, violates the Equal Protection Clause. *Romer*, 517 U.S. at 633–34, 116 S.Ct. 1620, 134 L.Ed.2d 855.

In *Romer*, the issue before the Supreme Court was whether an amendment to Colorado's state constitution, which prohibited any legislation or judicial action designed to protect the status of a person based on sexual orientation, violated the Fourteenth Amendment's Equal Protection Clause. The Supreme Court had little difficulty finding that it did. The Court noted that under the ordinary deferential Equal Protection standard—that is, the "rational basis standard"—the Court would "insist on knowing the relation between the classification adopted and the object to be obtained." *Id.* at 632. The Court explained that this "link" between classification and the objective "gives substance to the Equal Protection Clause." *Id.* This "link" was lacking in *Romer*. In reaching its conclusion, the Court observed that the "inevitable inference" from a law of this sort is that it is "born of animosity toward the class of persons affected." *Id.* at 634, 116 S.Ct. 1620. The Court characterized the amendment as "a status-based enactment

divorced from any factual context from which we could discern a relationship to legitimate state interests." *Id.* at 635, 116 S.Ct. 1620; *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

Several Courts have recently considered the question of Equal Protection and sexual orientation and applied the "rational basis test" utilized in *Romer*. These cases, which typically analyzed the constitutionality of the United States Military's "Don't Ask, Don't Tell" policy, examined whether the forced separation from service of individuals who engage in a homosexual act or who state that they are homosexual violates the Equal Protection Clause. In concluding that the policy does not violate the Equal Protection Clause, these Courts have relied on the uniqueness of the military setting and the deference accorded to military decisions. *See, e.g., Able v. United States*, 155 F.3d 628, 632–35 (2d Cir. 1998); *Holmes v. California Army Nat'l Guard*, 124 F.3d 1126, 1132–1136 (9th Cir. 1997); *Richenberg v. Perry*, 97 F.3d 256, 260–61 (8th Cir.1996), *cert. denied*, ––– U.S. ––––, 118 S.Ct. 45, 139 L.Ed.2d 12 (1997); *Thomasson v. Perry*, 80 F.3d 915, 928 (4th Cir.), *cert. denied*, 519 U.S. 948, 117 S.Ct. 358, 136 L.Ed.2d 250 (1996). Nevertheless, as in *Romer*, these Courts recognized that government action in a civil rather than a military setting cannot survive a rational basis review when it is motivated by irrational fear and prejudice towards homosexuals. *See, e.g., Able*, 155 F.3d at 634–35 (citing *City of Cleburne*, 473 U.S. at 448, 105 S.Ct. 3249).

Under the above cases, and viewing the proof in a light most favorable to Quinn, the plaintiff has introduced more than sufficient evidence to support a claim for an Equal Protection violation based on a workplace environment that transcended hostile, coarse and boorish behavior, and which was motivated by an invidious, irrational fear and prejudice towards homosexuals. Section 1983 liability can be imposed upon the employer, the Nassau County

Police Department, and the remaining defendant supervisors, for failing to properly investigate and address Quinn's complaints, and permitting the acts of harassment which the supervisors either observed or themselves perpetrated. In this case, a jury reasonably could find all of these facts. A jury of reasonable persons could conclude that "[t]hrough the [supervisors'] failures and actions, the [harassing] conduct [became] an accepted custom or practice of the employer." *Gierlinger v. New York State Police*, 15 F.3d at 34 (citing *Bohen v. City of East Chicago, Ind.*, 799 F.2d at 1189). Like the enactment at issue in *Romer*, conduct by police department officers, supervisors and policy makers contributing to, failing to address, and outright condoning harassment of homosexuals amounts to impermissible "status-based [conduct and policy] divorced from any factual context from which we could discern a relationship to legitimate state interests." *Romer*, 517 U.S. at 635, 116 S.Ct. 1620. Such harassment by Nassau County Police Department personnel cannot survive a rational basis review when it is motivated by irrational fear and prejudice towards homosexuals. *See, e.g., Able*, 155 F.3d at 634–35 (citing *City of Cleburne*, 473 U.S. at 448, 105 S.Ct. 3249). The "inevitable inference" from the Quinn's mistreatment is that it was "born of animosity toward the class of persons affected," *Romer, supra*, at 634, 116 S.Ct. 1620, namely, homosexuals.

The Court disagrees with the defendants' contention that Quinn's claims are barred under the recent opinion by a Judge in this District in *Simonton v. Runyon*, 50 F.Supp.2d 159 (E.D.N.Y. 1999). In *Simonton*, the District Court granted the defendants' motion to dismiss the Title VII complaint of a former employee of the United States Postal Service, who alleged a hostile work environment stemming from mistreatment he allegedly received from co-workers and supervisors based upon his sexual orientation. The District Court held that Title VII does not provide a cause of action for harassment or discrimi-

nation based upon sexual orientation, reasoning that such conduct is not discrimination "based upon sex," is not otherwise included in the statute, and therefore, does not state a claim under Title VII. *Simonton*, 50 F.Supp.2d at 160–63.

In so holding, the District Court stated that in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), which held that a same-sex harassment is actionable under Title VII, the Supreme Court "never mentioned the issue of whether same sex harassment encompassed harassment based [on] sexual orientation." *Simonton*, 50 F.Supp.2d at 162–63. In the *Simonton* Court's view, the "failure to mention the issue [of homosexuality discrimination in *Oncale*] leaves undisturbed the line of cases holding that discrimination based upon a plaintiff's sexual orientation ... is not discrimination based upon sex and therefore does not state a claim under Title VII." *Simonton*, 50 F.Supp.2d 159 at 162–63. The cases relied upon consisted largely of Title VII opinions from other Circuits. *See Dillon v. Frank*, 952 F.2d 403, 1992 WL 5436 (6th Cir. Jan.15, 1992) (Title VII does not provide a remedy for hostile environment created by taunts aimed at plaintiff's homosexuality); *Williamson v. A.G. Edwards and Sons, Inc.*, 876 F.2d 69, 70 (8th Cir.1989) (Title VII does not prohibit discrimination based upon homosexuality), *cert. denied*, 493 U.S. 1089, 110 S.Ct. 1158, 107 L.Ed.2d 1061 (1990); *Ulane v. Eastern Airlines, Inc.*, 742 F.2d 1081, 1085–87 (7th Cir.1984) (Title VII does not cover discrimination allegedly based upon fact that plaintiff was a transsexual), *cert. denied*, 471 U.S. 1017, 105 S.Ct. 2023, 85 L.Ed.2d 304 (1985).

Although the District Court acknowledged that the Second Circuit "has not squarely decided the issue of sexual orientation discrimination under Title VII either before or after *Oncale*," the Court relied on *DeCintio v. Westchester County Med. Ctr.*, 807 F.2d 304, 308 (2d Cir.1986)

in support of its view. *Simonton*, 50 F.Supp.2d at 162–63. In *DeCintio*, the male plaintiff claimed that he was the victim of sexual discrimination because his employer gave preferential treatment to a female with whom the employer was romantically involved. Holding that any preferential treatment was based, not upon plaintiff's sex, but upon the female employee's "sexual liaison" with her employer, the Second Circuit concluded that the plaintiff had not been discriminated against because of his sex. In rejecting the plaintiff's Title VII claim in *DeCintio*, the Second Circuit cited cases which declined to extend Title VII protection to claims of discrimination based upon sexual orientation. *See DeCintio*, 807 F.2d at 307. The District Court in *Simonton* also relied on two recent District Court opinions from other Circuits. *See Klein v. McGowan*, 36 F.Supp.2d 885, 889–90 (D.Minn.1999) (post-*Oncale* hostile environment claim under Title VII based upon plaintiff's perceived homosexuality is not harassment based upon sex); *Higgins v. New Balance Athletic Shoe, Inc.*, 21 F.Supp.2d 66, 74–75 (D.Maine 1998) (post-*Oncale* decision dismissing hostile environment Title VII claim alleging discrimination based upon plaintiff's homosexuality).

In this Court's view, the District Court's decision in *Simonton*, while well-written and thoughtful, is not controlling, because it was in the context of Title VII, not Section 1983. Title VII expressly defines those classes of people which fall under its protection, and states that discrimination in employment is prohibited against "any individual ... because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). This Court need not address the issue whether discrimination "because of sex" under Title VII encompasses discrimination "because of sexual orientation." The Equal Protection Clause of the Fourteenth Amendment is not so limited by express category. On the contrary, as noted above, the Equal Protection Clause protects similarly situated individuals from invidious and irrational discrimination based on sexual orientation.

Accordingly, the Court denies the remaining defendants' motions for judgment as a matter of law dismissing the Section 1983/Equal Protection claim.

## C. § 1985(3)/Conspiracy

42 U.S.C. § 1985(3) provides, in relevant part:

> If two or more persons in any state ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Quinn contends that the defendants acted in concert with each other to discriminate against him based on his sexual orientation. Aside from the defendants' other arguments concerning their Section 1983 liability, the main issue with respect to the Section 1985(3) cause of action is whether the claim is barred by the intracorporate conspiracy doctrine.

Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together. *See Solla v. Aetna Health Plans of New York Inc.*, 14 F.Supp.2d 252, 257 (E.D.N.Y. 1998). The Court notes that the Supreme Court has yet to address the issue of an intracorporate conspiracy in the context of a Section 1985(3) claim. *See Hull v. Shuck*, 501 U.S. 1261, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991) (White, J. and Marshall, J. dissenting on denial of petition for writ of cert.) ("We expressly left open that issue in *Great American Fed. Sav. & Loan Assn. v. Novotny*, 442 U.S. 366, 372 n. 11 [1979]"). A split of authority remains among the circuits with respect to this issue. *Id.* (citations omitted). Neverthe-

less, the Second Circuit has imported the doctrine into Section 1985 jurisprudence in this regard, and has dismissed a claim of conspiracy against officers and employees of a non-profit institution. *See Herrmann v. Moore*, 576 F.2d 453 (2d Cir.), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 679 (1978). "Intracorporate immunity has also been extended to the context of conspiracies between a public entity and its employees." *Rini v. Zwirn*, 886 F.Supp. 270, 292 (E.D.N.Y.1995) (applying intracorporate conspiracy doctrine in the context of municipal defendants).

■ At first blush, the intracorporate conspiracy ·doctrine would appear applicable here, where all of the individual defendants are employees of a single entity, the Nassau County Police Department. However, "[a]n exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." *Bond v. Board of Education of the City of New York*, 1999 WL 151702, *1 (E.D.N.Y. March 17, 1999) (citing *Roniger v. McCall*, 22 F.Supp.2d 156, 168 [S.D.N.Y.1998]; *Solla*, 14 F.Supp.2d at 257–59); *see also Rini v. Zwirn*, 886 F.Supp. 270, 293 (E.D.N.Y. 1995) (denying a motion to dismiss a Section 1985 claim where a town employee, acting as an individual, conspired with other town employees); *Agugliaro v. Brooks Bros., Inc.*, 802 F.Supp. 956, 963 (S.D.N.Y. 1992) (stating that the plaintiff may maintain a Section 1985 claim against a corporation and its agents where the plaintiff alleges that defendants were acting upon their own motives); *cf. Yeadon v. New York City Transit Auth.*, 719 F.Supp. 204, 212 (S.D.N.Y.1989) (rejecting defense that conspiracy within a corporation cannot exist in the context of a Section 1985[3] claim where a plaintiff adequately alleges a series of separate discriminatory acts by the corporate entity and its agents and where a plaintiff adequately alleges that each defendant possessed an independent, personal conspiratorial purpose). Whether the doctrine applies to the facts present here depends on whether each and every defendant was acting in furtherance of the Police Department's interests, or whether, instead, their conduct was motivated by a personal interest.

■ Here, the Court already has found that Rice was acting in a personal, rather than official capacity, in abusing Quinn based on his sexual orientation. For that matter, Rice admits—indeed, advocates,— that he was acting not "under color of state law" or in furtherance of the Police Department's interests when harassing the plaintiff. The Court therefore finds, as a matter of law, that this case presents the "personal interest" exception to the intracorporate conspiracy doctrine. Accordingly, the Court denies all of the defendants' motions for judgment as a matter of law dismissing the Section 1985 conspiracy claim.

### D. Section 1983/First Amendment

Quinn also contends that he was harassed and transferred to a different precinct in retaliation for his filing a Notice of Claim against the defendants.

On or about March 1, 1995, Quinn served and filed a Notice of Claim against defendants Nassau County Police Department, Lishansky, and Ryan, as well as several police department personnel who are not parties to this lawsuit. The Notice of Claim describes the claim as follows:

> Defendants engaged in a pattern of harassment, intimidation, [and] discrimination based upon claimant's *medical disability*, conspiracy, malicious prosecution, abuse of process, violated and ignored the rules and regulations governing Police Officers in the County of Nassau, intimidation in the creation of an unfit working environment, intentional infliction of emotional distress, mental and physical abuse. Furthermore, that

claimant's superiors participated, condoned, and encouraged such actions. (Notice of Claim) (emphasis added).

According to Quinn, after filing the Notice of Claim he "became the victim of increased harassment and discrimination as a direct result of his attempt to secure his Constitutional Rights." With respect to this free speech cause of action, Quinn seemingly asserts that he was deprived of his right to petition the government for redress when the defendants, acting under color of state law, retaliated against him for filing a Notice of Claim.

▮ To sustain his Section 1983 retaliation cause of action based on a First Amendment free speech claim, the plaintiff must establish that: (1) his comments implicated a matter of public concern; and (2) his protected speech was a "substantial or motivating factor" behind the defendants' retaliation. *See Sheppard v. Beerman,* 94 F.3d 823, 827 (2d Cir.1996) (quoting *Frank v. Relin,* 1 F.3d 1317, 1328 [2d Cir.1993]); *Piesco v. Koch,* 12 F.3d 332, 342 (2d Cir.1993).

▮ The "right to petition the government for redress of grievances, which is an assurance of a particular freedom of expression, ... is subject to the same constitutional analysis as the right to free speech." *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1059 (2d Cir.), *cert. denied,* 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993) (quoting *Wayte v. United States,* 470 U.S. 598, 610 n. 11, 105 S.Ct. 1524 [1985]); *see also Ezekwo v. NYC Health & Hosp. Corp.,* 940 F.2d 775, 778 (2d Cir.), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 657, 116 L.Ed.2d 749 (1991). The First Amendment protects speech that involves matters of public concern. *See Connick v. Myers,* 461 U.S. 138, 147, 154, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Easton v. Sundram,* 947 F.2d 1011, 1015 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Whether speech is constitutionally protected, namely of public concern, is a question of law for the Court to decide. *Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. 1684.

On the one hand, the "Second Circuit has ruled that an EEOC complaint based on race and sex discrimination is not a matter of public concern, and therefore, is not protected speech under the First Amendment." *Lehmuller v. Incorporated Village of Sag Harbor,* 944 F.Supp. 1087, 1095 (E.D.N.Y.1996) (citing *Ezekwo,* 940 F.2d at 778, 781). "[W]hen an employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of a personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick,* 461 U.S. at 147, 103 S.Ct. 1684.

On the other hand, the Second Circuit has concluded that where complaints of employment discrimination "implicate[ ] system-wide discrimination they ... unquestionably involve[ ] a matter of 'public concern.'" *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 143 (2d Cir. 1993), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). Thus, the filing of the Notice of Claim may constitute protected speech if there is an "indication that the plaintiff 'wanted to debate issues of sex discrimination,' that [the proposed] suit sought 'relief against pervasive or systemic misconduct by a public agency or public officials,' or that [the possible] suit was 'part of an overall effort ... to correct allegedly unlawful practices or bring them to public attention.'" *Id.* (quoting *Yatvin v. Madison Metro. School Dist.,* 840 F.2d 412, 420 [7th Cir.1988]).

1. *The "Speech of Public Concern" Requirement*

▮ The initial question of law for this Court to determine is whether Quinn was speaking on matters of public concern when he filed the Notice of Claim. Whether an employee's speech addresses a

matter of public concern "must be determined by the content, form and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684. The statement at issue will "not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose." *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). As the Second Circuit has observed, the Supreme Court has declined to establish a general standard against which such statements may be judged, recognizing that there is a great variety of fact situations in which disputes regarding allegedly protected speech may arise. *See Blum v. Schlegel,* 18 F.3d 1005 (2d Cir.1994). The Second Circuit commented that a matter is one of public concern when the speaker's interest in it arises from the speaker's status as a public citizen, as opposed to his or her status as a public employee. *Blum,* 18 F.3d at 1012.

In the Court's view, the Notice of Claim at issue does not implicate matters of public concern. First, Quinn's Notice of Claim was brought in the context of a private employment dispute and to further his own employment interest. As such, Quinn's First Amendment interest was weakened by the context of his speech. *See White Plains Towing Corp. v. Patterson,* 991 F.2d at 1060 (". . . Cherico's First Amendment interest in filing his shortlived personnel complaint would be weak if, as the trial record strongly suggests, he took that action solely to obtain additional referrals."). Second, the Notice of Claim does not seek to bring to public light the County's alleged sexual orientation discrimination which "may well be a matter of interest to the community." *Lehmuller v. Incorporated Village of Sag Harbor,* 982 F.Supp. 132, 135 (E.D.N.Y.1997). Instead, it raises an entirely different theory, namely, alleged discrimination based on medical disability. Indeed, the Notice of Claim mentions nothing about sexual or-

ientation discrimination. For these reasons, the Court finds, as a matter of law, that Quinn's filing a Notice of Claim was not constitutionally protected activity under the First Amendment.

### 2. The "Substantial" or "Motivating Factor" Requirement

The Court finds that the First Amendment claim fails for another reason: Quinn has not adduced evidence that his speech regarding an alleged medical disability was at least a substantial or motivating factor in the retaliatory actions allegedly taken. *See White Plains Towing Corp.,* 991 F.2d at 1058 (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 [1977]). Even viewing the evidence in a light most favorable to the plaintiff, there was no proof at trial that the defendants' alleged retaliatory actions were motivated by Quinn speaking out regarding his "medical disability." Instead, Quinn's entire theory was that he was discriminated against based on sexual orientation, a contention not set forth in the Notice of Claim.

For these reasons, the Court grants the defendants' motions for judgment as a matter of law dismissing the cause of action based on Section 1983/First Amendment.

### E. The Defendants' Motion for Remittitur

Finally, the Court considers the defendants' oral, post-verdict motions for remittitur, seeking an order setting aside the jury's award of $250,000 in damages for emotional distress as excessive.

"It is well settled that calculation of damages is the province of the jury." *Walz v. Town of Smithtown,* 46 F.3d 162, 170 (2d Cir.1995) (quoting *Ismail v. Cohen,* 899 F.2d 183, 186 [2d Cir.1990]). The district court has authority to enter a conditional order of remittitur, compelling a plaintiff to choose between reduction of an excessive verdict and a new trial, only

where " 'the award is so high as to shock the judicial conscience and constitute a denial of justice.' " *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 165 (2d Cir.1998) (citing and quoting *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 433, 116 S.Ct. 2211, 135 L.Ed.2d 659 [1996]; *O'Neill v. Krzeminski,* 839 F.2d 9, 13 [2d Cir.1988] [additional citations omitted] ).

Here, the defendants ask the Court to find that the emotional distress component of the jury's verdict "shocks the conscience." In support of this theory, the defendants assert that $250,000 in damages for emotional distress is disproportionate to the emotional injuries the plaintiff actually suffered as a result of the sexual orientation discrimination. The defendants note that the plaintiff did not begin seeking mental health counseling with a social worker until he had a consultation with an attorney about his case. Also, the defendants emphasize that there was no testimony showing that Quinn will have permanent emotional scars because of the discrimination. The Court disagrees.

 The Court has considered damages awards in similar cases in assessing the propriety of the amount of damages awarded here. *See Blissett v. Coughlin,* 66 F.3d 531, 536 (2d Cir.1995) (citing *Martell v. Boardwalk Enterprises, Inc.,* 748 F.2d 740, 752–53 [2d Cir.1984] ). The award of $250,000 for emotional distress is in line with similar damages awards in this Circuit. *See, e.g., Hughes v. Patrolmen's Benevolent Assoc. of City of New York, Inc.,* 850 F.2d 876, 884 (2d Cir.) (allowing award of $575,000 against defendant police officers for protracted course of harassment against fellow officer), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). Quinn's testimony, which his social worker corroborated, as to the emotional distress he suffered from years of chronic, pervasive, humiliating and severe sexual orientation harassment adequately supports the award of compensatory damages in this case. This award does not shock the Court's conscience.

## III. CONCLUSION

Having reviewed the defendant Rice's submission—the only Memorandum of Law submitted to the Court—and heard oral argument, and for the reasons stated above, it is hereby

**ORDERED,** that the Court grants the defendant Rice's motion for judgment as a matter of law dismissing the Section 1983/Equal Protection claim against him; and it is further

**ORDERED,** that the Court denies the remaining defendants' motions for judgment as a matter of law dismissing the Section 1983/Equal Protection claim; and it is further

**ORDERED,** that the Court grants the defendants' motions for judgment as a matter of law dismissing the Section 1983/First Amendment claim; and it is further

**ORDERED,** that the Court denies all of the defendants' motions for judgment as a matter of law dismissing the Section 1985/conspiracy claim; and it is further

**ORDERED,** that the defendants' motions to set aside the emotional distress award of $250,000, as being excessive, is denied.

**SO ORDERED.**