Theresa C. BOSTICK Plaintiff(s),

v.

SUFFOLK COUNTY, Suffolk County Department of Risk Management, Suffolk County Police Department, Lowell Sands, James Perretto, Sergeant Robert Ward, Arlene Compossa and Shirley Dematteo, along with unnamed John Does and Jane Roes, Defendant(s).

No. 00–CV–333(TCP).

United States District Court, E.D. New York.

March 18, 2002.

Sean J. Conway, Islandiae, NY, for plaintiff.

Jeltje Dejong, Suffolk County Attorney's Office, Robert J. Cimino, Hauppague, NY, for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Before this Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In this action, Theresa C. Bostick ("Plaintiff") alleged discrimination based on race and ethnicity and a pendent State law claim of intentional infliction of emotional distress. For the following reasons, Defendants' motion is granted.

## BACKGROUND

### I. *Factual Background*

#### A. *Plaintiff's Employment at Suffolk*

Plaintiff is a female of Black African descent, age forty three (43) upon commencement of this lawsuit. (Pl.'s 56.1 Stmt. ¶ 1; Compl. ¶ 23.) Plaintiff suffers from advanced stage renal disease, herniated discs in her neck, carpal tunnel syndrome in both wrists and assorted other physical ailments and as a result has been forced to miss work on several occasions. (Compl.¶¶ 4, 26.) Plaintiff began seeing a professional counselor due to the three incidents discussed herein as well as for marriage counseling. (Dep. of Bostick at 86.) Plaintiff is currently not working as she awaits a kidney transplant. (Pl.'s Mem. Opp. Summ. J. at 1.)

Plaintiff began working for Defendants in or about 1990 as a Suffolk County Police Department Detention Attendant, in connection with which her duties included supervision of female arrestees at various Suffolk County Police Department police stations. (Pl.'s 56.1 Stmt. ¶ 2; Compl. ¶ 3.) Plaintiff was unable to perform her regular duties as a female detention attendant for the police department due to injuries sustained in the course of her employment between 1993 and 1996. (Bauccio Aff. ¶ 2; Pl.'s 56.1 Stmt. ¶ 3; Compl. ¶ 61.)

In or before 1997, Plaintiff was assigned to work in the administrative offices of the Suffolk County Department of Risk Management and Benefits (the "Risk Management Department") in a "light duty" ca-

pacity. (Bauccio Aff. ¶ 2; Pl.'s 56.1 Stmt. ¶ 3.) Plaintiff's duties in the Risk Management Department consisted of filing, opening, sorting and distributing mail. (Bauccio Aff. ¶ 5.) Plaintiff worked in the Risk Management Department until November 1999 when she became totally disabled. (Dep. of Bostick at 87.)

Of the approximately thirty (30) employees in the Risk Management Department, Plaintiff contends that, during the relevant time, she and only one other employee were persons of color. (Pl.'s 56.1 Stmt. ¶ 9.)

### B. *James Perretto Incident (August 1997)*

At an office retirement party in August 1997, Defendant James Perretto stated "We have everyone here at the table. We have all the Italians. We have all the Jews and we have Theresa." (Dep. of Bostick at 36–37; Def.'s 56.1 Stmt. ¶ 7.) Plaintiff has alleged that Defendant James Perretto referred to her as a "token"; however it is undisputed that Defendant James Perretto never actually used the word "token." (Pl.'s 56.1 Stmt. ¶ 8; Dep. of Bostick at 39.)

Plaintiff complained to Phil Bauccio, the Executive Director of Risk Management and Benefits. (Pl.'s 56.1 Stmt. ¶ 10–11.) Plaintiff alleges that Phil Bauccio did not refer the incident to Patricia Grimes, the "Designee for Discrimination Complaints in Audit and Control." (Pl.'s 56.1 Stmt. ¶ 11.) Phil Bauccio called Defendant James Perretto into his office to discuss the incident. (Def.'s 56.1 Stmt. ¶¶ 8–9; Dep. of Bostick at 41.) Defendants contend that Defendant James Perretto apologized to Plaintiff for offending her and Plaintiff stated that was a satisfactory resolution. (Def.'s 56.1 Stmt. ¶¶ 10–11; Dep. of Bostick at 41.) In contrast, Plaintiff now contends that she found this resolution insufficient. (Pl.'s 56.1 Stmt. ¶ 12.)

Viewed in its entirety, including the apology and resolution, the incident may not be claimed to be material evidence of a hostile environment.

### C. *Lowell Sands Incident (August 1998)*

On or about August 11, 1998, Plaintiff and a summer intern by the name of Casey were discussing that a local bagel shop smelled like bleach. (Dep. of Bostick at 43; Pl.'s 56.1 Stmt. ¶ 13.) Defendant Lowell Sands stated words to the effect of, "If you used a little bleach on your skin you would look just like us and maybe you could be [a] permanent [employee in the Risk Management Department]." (Pl.'s 56.1 Stmt. ¶ 13.)

Plaintiff alleges that she once again complained to Phil Bauccio, who once again failed to report the incident, failed to direct Plaintiff to the internal discrimination procedure, and failed to take any action. (Pl.'s 56.1 Stmt. ¶¶ 14–17.) Plaintiff further contends that Phil Bauccio tried to dissuade her from filing a complaint through the proper formal channels. (Dep. of Bostick at 48; Pl.'s Mem. Opp. Summ. J. at 3.)

Phil Bauccio discussed the incident with Defendant Lowell Sands. (Def.'s 56.1 Stmt. ¶¶ 14–15.) Defendant Lowell Sands apologized to Plaintiff and was eventually disciplined as discussed immediately below. (Def.'s 56.1 Stmt. ¶ 16; Dep. of Bostick at 49.)

### D. *Plaintiff Complains to Patricia Grimes (August 1998)*

Patricia Grimes was the designated sexual harassment discrimination officer for audit and control. (Dep. of Grimes at 7.) Plaintiff alleges that it was from persons other than her supervisors that she learned that she should file a formal complaint with Patricia Grimes. (Pl.'s 56.1

Stmt. ¶ 18.) Accordingly, Plaintiff filed a formal complaint of discrimination with Patricia Grimes regarding Defendant Lowell Sands' comment. (Pl.'s 56.1 Stmt. ¶ 19.)

Patricia Grimes then investigated Plaintiff's complaint. (Def.'s 56.1 Stmt. ¶¶ 19–20.) In so doing, Patricia Grimes spoke to Joseph Poerio, Phil Bauccio, the intern Casey's mother speaking on her daughter's behalf, Defendant Lowell Sands, Sylvia Diaz and Plaintiff. (Dep. of Grimes at 24.)

As a result of this investigation, disciplinary proceedings were initiated against Defendant Lowell Sands. (Def.'s 56.1 Stmt. ¶ 22; Dep. of Bauccio at 28.)

Again while as is the case with the first incident, the remark was certainly insensitive and improper but given the apology, the discipline of the offender, and the offer to effect the requested transfer as discussed immediately below, it does not demonstrate a hostile environment.

### E. *Joseph Poerio*

Plaintiff alleges that in the course of processing Plaintiff's complaint about Defendant Lowell Sands, Joseph Poerio, Chief Deputy Comptroller, suggested that Plaintiff transfer to the Social Services Department because she "would feel more comfortable there because there would be more people like [her] there," specifically stating that there "would be more of [her] kind there." (Dep. of Bostick at 54.)

Patricia Grimes, who was present when Joseph Poerio allegedly made this comment to Plaintiff, recalls that Plaintiff "stated that she felt uncomfortable in the office" and said that she wanted a transfer and that Joseph Poerio suggested a possible transfer to Social Services. (Dep. of Grimes at 27–28.) Patricia Grimes stated that Joseph Poerio "felt that there was a more diverse group of people working in social services overall and that perhaps [Plaintiff] would feel more comfortable there." (Dep. of Grimes at 28.) When asked if Joseph Poerio's use of the term "more diverse" meant "more than the audit and control office that [Plaintiff] had been working in", Patricia Grimes stated that "[Joseph Poerio] used the word, I'm not certain, I assume that, but I'm not certain." (Dep. of Grimes at 28.)

### F. *Shirley DeMatteo's Comment (July 1999)*

In or about July 1999, employees were discussing a bamboo plant on an employee's desk. Plaintiff alleges that Defendant Shirley DeMatteo stated words which in effect asked Plaintiff if "the bamboo plant [made Plaintiff] feel like [she was] in a jungle" and would it "feel more like a jungle if there were monkeys running up and down." (Pl.'s 56.1 Stmt. ¶ 21.)

Defendant Shirley DeMatteo stated that she has never heard of African American persons being referred to as "monkeys" or "jungle bunnies." (Pl.'s 56.1 Stmt. ¶ 23; Dep. of DeMatteo at 38.)

At the January 11, 2002 oral argument on this motion ("Oral Argument"), this Court was told by the Plaintiff's attorney that "monkeys" is a derogatory term applied to African Americans. Given that information, Defendant Shirley DeMatteo's comment was obviously improper to many although not a very clear piece of evidence in the establishment of a hostile environment.

### G. *Plaintiff Complains to Patricia Grimes*

Plaintiff complained to Patricia Grimes about Shirley DeMatteo's comment. (Pl.'s 56.1 Stmt. ¶ 25.)

Patricia Grimes asked Plaintiff to complete a form regarding the incident and communicated with the individuals Plaintiff mentioned. (Dep. of Grimes at 31–33.)

Patricia Grimes also discussed the incident with Joseph Poerio. (Dep. of Grimes at 32.)

After completing the investigation, Patricia Grimes forwarded a written report to Joseph Poerio and Christie Thomas, a woman working in the office of affirmative action. (Dep. of Grimes at 34.) Joseph Poerio then decided that the comment was merely about the bamboo tree and made generally to the people standing there. (Dep. of Grimes at 35.)

The Department of Audit and Control concluded that Plaintiff's complaint was "unwarranted". (Def.'s 56.1 Stmt. ¶ 26.)

## H. Other Incidents In Risk Management Department

Plaintiff contends that, following the Shirley DeMatteo incident, she was given the task of distributing a handout regarding employees making sexist/racist comments at work. (Dep of Bostick at 82.) Plaintiff deemed this task as humiliating given that many people knew she was pursuing discrimination claims at the time. (Dep. of Bostick at 82; Pl.'s Mem. Opp. Summ. J. at 6.) One might well argue effectively on this that management was showing all employees that they were backing Plaintiff's complaints and trying to establish not a hostile but a more civil attitude for all employees to this fellow employee.

Additionally, Plaintiff felt that other co-workers were "watching her." (Dep. of Bostick at 57–59.) For example, Plaintiff contends that one supervisor often asked Defendant Arlene Compossa "Where is Theresa" and another co-worker kept track on a calendar pad of when Plaintiff went to and returned from the bathroom. (Dep. of Bostick at 59.)

## II. Procedural Background

### A. Complaint

After exhausting her administrative remedies,[1] Plaintiff filed a Complaint on January 18, 2000 asserting the following causes of action:

1. Suffolk County, Suffolk County Department of Risk Management and Suffolk County Police Department, Sergeant Robert Ward and/or Arlene Compossa discriminated against Plaintiff by failing to make reasonable accommodations to her known disability in violation of the ADA

2. Attorneys' fees in connection with ADA violations

3. Suffolk County, Suffolk County Department of Risk Management and Suffolk County Police Department, Sergeant Robert Ward and/or Arlene Compossa, and John Does and Jane Roes violated New York Executive Law §§ 290 et seq. by failing to make reasonable accommodations to a known disability

4. Suffolk County, Suffolk County Department of Risk Management and Suffolk County Police Department, Sergeant Robert Ward, Arlene Compossa, Shirley DeMatteo, Lowell Sands, James Perretto, John Does and Jane Roes violated 42 U.S.C. § 1981 in that Plaintiff was denied the full benefits of her contractual relationship with Defendants based upon her race and ethnicity

5. Suffolk County, Suffolk County Department of Risk Management and Suffolk County Police Department, Sergeant Robert Ward and/or Arlene Compossa, Shirley DeMatteo, Lowell Sands, James Perretto, John Does and Jane Roes violated 42 U.S.C. § 1983 as a statutory guarantee of

1. See Compl. ¶¶ 15–22.

Plaintiff's civil rights under the Fourteenth Amendment by discriminating against and denying Plaintiff her civil rights acting under color of state and local law

6. Attorneys fees under ˙ 42 U.S.C. § 1988

7. Intentional Infliction of Emotional Distress based on Shirley DeMatteo's comment

8. Intentional Infliction of Emotional Distress against Sergeant Robert Ward and/or Arlene Compossa and John Does and Jane Roes

9. Vicarious liability for Intentional Infliction of Emotional Distress asserted against Suffolk County, Suffolk County Police Department and/or Suffolk County Department of Risk Management

10. Against Governmental defendants for Fourteenth Amendment violation, deprivation of equal protection under laws and deprivation of her property without due process

11. Against Governmental defendants for violation of Article I § 11 of the Constitution of the State of New York

12. Suffolk County, Suffolk County Department of Risk Management, Suffolk County Police Department, Sergeant Robert Ward and Arlene Compossa, and John Does and Jane Roes violated New York Executive Law §§ 290 *et seq.* by discriminating against Plaintiff in the terms and conditions of her employment based upon Plaintiff's race and ethnicity

13. Suffolk County, Suffolk County Department of Risk Management, Suffolk County Police Department, Sergeant Robert Ward and Arlene Compossa, and John Does and Jane Roes for· conspiring to deprive Plaintiff of her civil rights

14. Against John Does and Jane Roes who are persons in the position to have remedied, intervened or otherwise assisted Plaintiff as supervisors and failed to act though having knowledge of various deprivations of civil rights suffered by Plaintiff.

### B. *Worker's Compensation and Stipulation to Withdraw Claims*

At the time of commencing this lawsuit, Plaintiff had a New York State Workers Compensation case pending. (Dejong Decl. ¶ 2.) During the pendency of this lawsuit, the New York State Workers Compensation case was completed to Plaintiff's satisfaction. (Dejong Decl. ¶ 3.)

Plaintiff then withdrew her claims pertaining to discrimination based upon disability. (Stipulation Withdrawing Some of Plaintiff's Claims, dated July 25, 2001.) Specifically, Plaintiff withdrew:

1. First Cause of Action under the ADA;

2. Second Cause of Action for Attorney's Fees pursuant to the ADA;

3. Third Cause of Action for discrimination based upon disability under New York State Law;

4. Claims against defendants Suffolk County Police Department, Sergeant Robert Ward and Arlene Compossa.

(Stipulation Withdrawing Some of Plaintiff's Claims, dated July 25, 2001.)

Plaintiff's remaining claims are for race discrimination under 42 U.S.C. §§ 1981 and 1983; 42 U.S.C. §§ 2000e *et seq* ("Title VII"); pendent State law claims under the New York Human Rights law for employment discrimination based upon race/ethnicity; common law claim of intentional infliction of emotional distress against Defendant Shirley DeMatteo; and Article I § 11 of the New York State Constitution. (Pl.'s Mem. Opp. Summ. J. at 7.)

## C. *Summary Judgment Motion*

Defendants moved for summary judgment and this Court held Oral Argument on January 11, 2002.

### *SUMMARY JUDGMENT STANDARD*

A court may grant summary judgment if it appears that "there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the record in a light most favorable to the non-moving party. *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the non-moving party must show that a disputed material fact exists in light of the substantive law by offering "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Dister*, 859 F.2d at 1114 (citations omitted).

### *DISCUSSION*

## I. *Plaintiff Failed To Establish A Hostile Work Environment*

 Plaintiff's discrimination claims are based on a theory of a hostile work environment.[2] To sustain a hostile work environment claim, Plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. *See e.g. Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.2000). Further, Plaintiff must show that a basis exists for imputing the conduct that created the hostile work environment to the employer. *See e.g. Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir.1999).

 The conduct must be so severe or pervasive as to create an "objectively hostile or abusive work environment" and also such that the "victim subjectively perceives the environment to be abusive." *Id.* (citations omitted).

 A court should look at the totality of the circumstances to determine if the environment is sufficiently hostile or abusive. *Cruz*, 202 F.3d at 570; *Harris*, 510 U.S. at 23, 114 S.Ct. 367. There is no mathematically precise test in this regard. *Harris*, 510 U.S. at 22–23, 114 S.Ct. 367. However, some factors to consider are frequency and severity of conduct, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's work performance. *Id.* Plaintiff "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Cruz*, 202 F.3d at 570 (citations omitted).

Faced with facts very similar to those in the instant case, the Second Circuit affirmed a district court's holding that "essentially three incidents of racial animosity by a co-worker spanning over 25 months,

---

**2.** The standard used for Title VII hostile work environment claims is applied to 42 U.S.C. § 1981 and New York State Human Rights claims. *Whidbee v. Garzarelli Food Special-* *ties, Inc.*, 223 F.3d 62, 68 (2d Cir.2000); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 n. 4 (2d Cir.1995).

with each incident separated by a full year, during which time no racial slurs were made" did not raise a triable issue of hostile work environment harassment. *Arroyo v. Westlb Admin., Inc.*, 2000 WL 562425, *2, No. 99–7942, 2000 U.S.App. LEXIS 9528, at *6 (2d Cir. May 9, 2000)[3]; *see also Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d. Cir.1986) (holding that, to establish a hostile work environment, "plaintiff[ ] must prove more than a few isolated incidents of racial enmity" and "[c]asual comments, or accidental or sporadic conversation, will not trigger equitable relief pursuant to the statute"); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (stating that "instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments") (citations omitted).

■ In the instant case, the three primary incidents at issue were twelve months apart, unrelated, sporadic and isolated, spanning as they did from August 1997 to July 1999. After considering the length of time involved and the nature of the comments at issue, this Court concludes that Plaintiff failed to establish a hostile work environment and that the causes of action premised on the same are accordingly dismissed.[4]

## II. *42 U.S.C. § 1983 Claim*

Plaintiff's 42 U.S.C. § 1983 claim is based on the Fourteenth Amendment. (Compl.¶ 113.)

### A. *Monell Liability*

■ A municipality may not be held liable based upon a theory of respondeat superior. *See e.g. Monell v. Dep't of Social Serv. of the City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Clarke v. City of New York*, No. 98 CV 3715, 2001 WL 876926, *10, 2001 U.S. Dist LEXIS 11136, at *31 (E.D.N.Y. Aug. 1., 2001). Instead, a plaintiff must establish that a constitutional deprivation resulted from the existence of a municipal custom, policy, or practice. *See e.g. Monell*, 436 U.S. at 694, 98 S.Ct. 2018; *Clarke*, 2001 WL 876926, *10, 2001 U.S. Dist LEXIS 11136, at *31. Further, a municipality may also be held liable under 42 U.S.C. § 1983 for actions taken or decisions made by so called policy makers. *See e.g. St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

As an initial matter, there is a dispute as to the basis for Plaintiff's 42 U.S.C. § 1983 claim. Defendants argue that Plaintiff's 42 U.S.C. § 1983 claim fails because she failed to allege an unlawful municipal policy that allegedly caused Plaintiff to be subject to a hostile work environment. (Def.'s Mem. Supp. Summ. J. at 15.) Then, in her Memorandum of Law in Opposition, Plaintiff asserted that Suffolk County is liable under 42 U.S.C. § 1983 because it maintained a policy of segregation by which employees of color were concentrated in the Social Services Department and whereby she was the only person of color working in her area of Audit and Control, evidenced by the fact that Joseph Poerio (who Plaintiff deems a policy maker) suggested that she transfer to the Social Services Department "where there were others of 'her kind'" (Pl.'s Mem. Opp. Summ. J. at 16–17.)[5] Then, in

---

**3.** Affirming *Arroyo v. WestLB Admin., Inc.*, 54 F.Supp.2d 224 (S.D.N.Y.1999).

**4.** Based on a finding that Plaintiff failed to establish a hostile work environment, this Court need not, and therefore declines to, decide whether or not a hostile work environment could be imputed to the employer.

**5.** As noted in the Factual Background section of this Memorandum and Order, Patricia Grimes, who was present when Joseph Poerio suggested the transfer, recalled that Plaintiff "stated that she felt uncomfortable in the office" and said that she wanted a transfer and then Joseph Poerio suggested a possible trans-

their Reply Memorandum of Law, Defendants argue that "[i]t has never been alleged in this litigation that Suffolk County maintained a policy of segregation regarding distribution of workers in its Insurance and Risk Management Division [and][b]oth plaintiff's EEOC charge and complaint are devoid of such an allegation" and that "Plaintiff has not demonstrated this novel theory, nor has [she] ever attested to the existence of this policy." (Def.'s Reply Mem. Supp. Summ. J. at 7.)

Plaintiff's 42 U.S.C. § 1983 claim against the municipal defendants may not stand whatever the precise basis thereof. This Court finds that there is insufficient evidence of any custom or policy causing any constitutional deprivation here.

Assuming first that the alleged constitutional deprivation was, as Defendants contend, based upon an alleged municipal custom or policy that created a hostile work environment, the claim fails. "[H]arassment can, under certain circumstances, amount to a constitutional tort." *Quinn v. Nassau County Police Dept.*, 53 F.Supp.2d 347, 356 (E.D.N.Y.1999). Here, this Court finds that there was no harassment, no hostile work environment and no evidence of a custom or policy with regard to the same.

Turning next to the allegation that Defendants maintained a policy of segregation. Plaintiff has not provided sufficient evidence of a municipal custom/policy or a

policy-maker's decision by simply stating that Joseph Poerio suggested that she transfer to a more diverse department. It is well settled that Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Instead, the non-moving party must show that a disputed material fact exists in light of the substantive law by offering "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Dister*, 859 F.2d at 1114 (citations omitted). There has been no such showing here.[6]

## B. Individual Defendants

This Court likewise finds no basis to hold the individual defendants liable under 42 U.S.C. § 1983.

Assuming, *arguendo*, that Suffolk County maintained a policy of segregation and that there was a constitutional deprivation, this would not translate into 42 U.S.C. § 1983 liability for the individual defendants. "A plaintiff attempting to establish the liability of individual defendants under 42 U.S.C. § 1983 must demonstrate personal involvement of defendants in alleged constitutional deprivations as a prerequisite to an award of damages." *Clarke*, 2001 WL 876926, *10, 2001 U.S. Dist. LEXIS 11136, at *31 (citations omitted). Here, there is neither an allegation nor any evidence that these individual defen-

---

fer to Social Services. (Dep. of Grimes at 27–28.) Patricia Grimes stated that Joseph Poerio "felt that there was a more diverse group of people working in social services overall and that perhaps [Plaintiff] would feel more comfortable there." (Dep. of Grimes at 28.) In short, Patricia Grimes testified that Plaintiff requested a transfer and Joseph Poerio tried to be helpful; hardly a ground for "harassment" or "segregation."

6. Furthermore, there is insufficient evidence of an equal protection violation. To establish

an equal protection violation, plaintiff "must prove purposeful discrimination directed at an identifiable or suspect class" as compared to similarly situated persons. *Quinn*, 53 F.Supp.2d at 355. Likewise, Plaintiff has failed to establish a violation of Article I § 11 of the New York State Constitution, whose "reach is co-extensive with the federal provision." *The Great Atl. & Pac. Tea Co., Inc. v. The Town of East Hampton*, 997 F.Supp. 340, 351 (E.D.N.Y.1998).

dants were at all involved in an alleged policy of segregation. Further, this Court has found that Plaintiff's constitutional rights were not violated and that she failed to sufficiently allege any such policy of segregation.

As for an allegation that a municipal custom or policy created a hostile work environment, this Court finds that a hostile work environment did not exist and that the individual defendants' actions do not rise to the level of a constitutional violation.[7]

### III. John Does and Jane Roes

Defendants argue, and this Court agrees, that the Fourteenth Cause of Action must be dismissed because John Does and Jane Roes have never been identified and also because Plaintiff has failed to establish any violation of her civil rights. (Def.'s Mem. Supp. Summ. J. at 20.)

### IV. Conspiracy Claim

Defendants argue, and this Court agrees, that the Thirteenth Cause of Action for conspiracy must be dismissed given that Plaintiff withdrew her claims against Defendants Robert Ward and Arlene Compossa, thus leaving only the Suffolk County defendants. (Def.'s Mem. Supp. Summ. J. at 20.) Further, Plaintiff has failed to establish any violation of her civil rights and therefore cannot establish a conspiracy regarding the same.

### V. Intentional Infliction of Emotional Distress

▮▮▮▮▮ In the Seventh Cause of Action, Plaintiff alleges that Shirley DeMat-

teo's statement gives rise to a claim of intentional infliction of emotional distress and in the Ninth Cause of Action, Plaintiff asserts the vicarious liability of her employer for said statement. To state such a claim, Plaintiff must show (1) extreme and outrageous conduct, (2) intent to cause or reckless disregard of a substantial probability of causing severe emotional distress, (3) a causal connection between the conduct and injury and (4) severe emotional distress. *See e.g. Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir.1999). Such a claim exists only where the conduct has been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* Plaintiff's claim falls short of this high standard.

### CONCLUSION

Accordingly, for the foregoing reasons, Defendants' motion for summary judgment should be and the same is hereby granted.

SO ORDERED.

---

7. In *Jemmott v. Coughlin,* the Plaintiff based his 42 U.S.C. § 1983 claim on defendant's alleged creation of a hostile work environment. 85 F.3d 61, 67 (2d Cir.1996). In analyzing defendants' assertion of qualified immunity, the Second Circuit questioned whether each individual's alleged conduct was sufficiently severe or pervasive to create a hostile work environment. The court further noted that, to sustain an equal protection claim, plaintiff would have to prove that defendants "intentionally discriminated against him based on his race." *Id.* at 68.